## IRWIN v. STATE BROKERAGE COMPANY.

[No. 12,086.    Filed April 21, 1925.]

1. APPEAL.—*Defendant whose answer was upheld on demurrer cannot complain on appeal that court did not carry the demurrer back to the complaint.*—Where defendant's answer was held good on demurrer, he cannot complain on appeal that the demurrer should have been carried back to the complaint, especially where the record does not show any request of the court to take such action.   p. 689.

2. CONTRACTS.—*Unambiguous words in a contract are to be given their ordinary and common meaning.*—Words used in a contract which are not ambiguous or uncertain in meaning are to be given their ordinary and common meaning.   p. 692.

3. BROKERS.—*Broker not entitled to commission on sale made after he had canceled the commission contract.*—A real estate broker who, having a contract with a landowner that she was to pay him a stipulated commission if she sold the land within six months after the expiration of the contract to any one with whom he had negotiations, wrote across the contract "Canceled as of June 28, 1923," could not recover a commission for a sale thereafter made to a party with whom the broker had been negotiating, as the word "canceled" means annul or destroy, make void or set aside.   p. 692.

From Tippecanoe Superior Court; *Charles A. West,* Special Judge.

Action by the State Brokerage Company against Addie Irwin.   From a judgment for plaintiff, the defendant appeals.   *Reversed.*

*Randolph & Randolph,* for appellant.

*E. B. Davidson* and *D. M. Patrick,* for appellee.

McMAHAN, J.—Complaint by appellee against appellant to recover a commission for the sale of certain real

estate owned by appellant. The complaint alleges that appellant and appellee entered into a written contract, May 16, 1923, whereby appellant gave appellee the exclusive right to sell the real estate, until June 10, 1923, and thereafter until appellant should give appellee a thirty-day written notice terminating the contract. The contract which is made part of the complaint, also provided that, if the property was sold or exchanged by appellant or any other person, before the termination of the contract, appellant should pay a named commission to appellee, or if it was sold or exchanged, within six months after such expiration to any person with whom appellee had had negotiations, appellant was to pay appellee the commission.

It is also alleged that appellee showed the property to different persons, including one Zimmerman; that appellant on July 16, 1923, through another agent and without having given notice of the termination of the agreement, sold and conveyed the property to one Wolsiefer, trustee, who purchased such property with the intention of delivering and conveying it to said Zimmerman; that the property was not conveyed directly to Zimmerman, but that she conveyed to said trustee with the purpose of having him convey the same to Zimmerman, intending thereby to defraud appellee and preventing it from collecting the commission. The commission was fixed in the contract at five per cent. on the first $3,000, and two per cent. on all over $3,000.

Appellant, without testing the sufficiency of the complaint by demurrer, filed an answer in two paragraphs, the first being a general denial. The second paragraph alleged that after the execution of the contract and before the commencement of this action, appellee and appellant agreed that the contract should be rescinded and abandoned, and that it was rescinded and abandoned. Appellee demurred to the second paragraph of answer

for want of facts, the particular objection, as set out in the memorandum, being that the answer does not allege there was any consideration for the alleged rescission and abandonment of the contract. The demurrer being overruled, the cause was tried by the court and resulted in a judgment in favor of appellee for $475, of which $135 was for attorney fees.

The errors assigned are, that the court erred: **(1)** In refusing to carry appellee's demurrer to the second paragraph of answer back and sustaining it to the complaint; and **(2)** in overruling the motion for a new trial.

The record fails to show that appellant requested the court to carry the demurrer back to the complaint or any refusal by the court so to do, or any exception by appellant. In view of this condition of the record, and without expressing any opinion as to the right of an appellant, under the law now in force to question the action of the court in refusing to carry a demurrer to an answer back and sustain it to the complaint, we hold the question is not before us for determination. See *Pritchett* v. *McGaughey* (1898), 151 Ind. 638, where, under a similar record, it was held a party could not complain of a ruling in his favor.

Appellant next contends that the decision of the court is not sustained by sufficient evidence, and is contrary to law.

The contract sued on was entered into May 16, 1923, and gave appellee the exclusive sale of the property until June 10, 1923, and thereafter until a thirty-day written notice of its termination was given. It provided for the payment by appellant of the commission to appellee, if before the expiration of the contract, appellant should, by herself or through any other person, sell the property, or if within six months after such expiration,

appellant should sell the property to any one with whom appellee had had negotiations.

While the contract was in force, appellee carried on negotiations for the sale of the property with several parties. One of the parties to whom appellee tried to sell the property was one Zimmerman, who, in company with a representative of appellee, examined the property and indicated a willingness to give $12,000 for it. Appellee, however, failed to produce a buyer, and on June 28, 1923, at the close of a conversation with appellant and her daughter concerning a withdrawal of the property from the market, appellee wrote across the face of the contract the words: "Canceled as of June 28, 1923." Appellee had priced the property to Zimmerman, at $13,000. Zimmerman was desirous of buying, and believing he could buy it through some person or agent other than appellee for less than $13,000, he informed a Mr. Harris, about June 15, or soon thereafter, that he would like to buy the property but did not want to negotiate with appellant for the purchase of the property. Harris thereupon made an appointment with appellant to show the property to a prospective purchaser. Harris then went to an acquaintance and friend, Wolsiefer, and told him of the desire of Zimmerman to purchase the property without letting appellant know anything about it, and asked Wolsiefer to go with him, Harris, and look at the property. This was done, and Harris, thereafter acting for Zimmerman, induced appellant to enter into a contract to sell the property to Wolsiefer for $12,800, and on July 17, 1923, appellant conveyed the property to Wolsiefer, "trustee," and on the next day Wolsiefer conveyed it to Zimmerman. Harris, Zimmerman and Wolsiefer were careful that appellant should not know, and she did not know, that the sale was being made to Zimmerman. Their thought was

that if appellant knew the facts, she would not sell to Zimmerman, for fear she might be compelled to pay a double commission. There is no evidence of any fraud on the part of appellant in procuring the cancellation of the contract sued on, or in the sale of the property by Harris to Zimmerman. If there was any fraud, it would seem to have been perpetrated by some one not a party to this action. Appellant, so far as the evidence shows, had no reason to suspect that she was selling to Zimmerman, and since she did not intentionally and knowingly sell to him, she should not be chargeable with the fraud and deceit of others.

While appellant, when she induced appellee to cancel the contract on June 28, may have had good reasons to believe she was going to be able to effectuate a sale through the Harris agency, there is no evidence that any agreement to that effect had been entered into at that time. The only evidence on this subject is, that on July 2, Zimmerman gave his check for $1,000 to Harris, that being the amount of cash which had to be paid to appellant when the contract of sale was executed. And even if the evidence were sufficient to show that appellant when she secured the cancellation of the contract knew the Harris agency had secured a purchaser for her property, such fact would not have any bearing on the question of appellee's right of recovery. Appellee bases its right to a commission on the contract of May 16, while appellant insists that this contract having been canceled, appellee cannot maintain an action on it to recover a commission. The evidence viewed in the light of appellee's contention is that on June 28, appellant represented to it that she was going away for the summer and desired to take her property off the market. Mr. Hill, who was the president of appellee corporation, testified that when one of appellant's daughters told him they wanted to take the prop-

erty out of the market, he replied, "All right, I'll write across the face of the contract 'Canceled as of June 28, 1923'; if you just want a new contract next fall you won't owe us any commission, but if you sell to any one of our customers you still owe us a commission." He then wrote the words "Canceled as of June 28, 1923," across the face of the contract, but kept the contract in his possession.

The decisive question in this appeal is, what, if any, effect did this cancellation have on the right of appellee to thereafter sue on the original contract for and recover a commission from appellant on account of the sale made by the Harris agency to Zimmerman, under the facts of this case.

The words used by the parties, "Canceled as of June 28, 1923" are not ambiguous, and should be given their ordinary and common meaning. "Cancel" means 2, 3. to annul or destroy; to make void; to set aside; as to cancel a debt or engagement. *Golden* v. *Fowler* (1858), 26 Ga. 451, 464; *Dreifus, etc., Co.* v. *Columbian, etc., Co.* (1900), 194 Pa. St. 475, 45 Atl. 370, 75 Am. St. 704; *Winton* v. *Spring* (1861), 18 Cal. 451; *Evans's Appeal* (1868), 58 Pa. 238.

In *Dreifus, etc., Co.* v. *Columbian, etc., Co., supra,* the court, purporting to quote from *Capital City, etc., Co.* v. *Detwiler* (1887), 23 Ill. App. 656, said: "The term 'cancellation' of a contract necessarily implies a waiver of all rights thereunder by the parties. If after breach by one of the parties, they agreed to 'cancel' it and make a new contract with reference to its subject-matter, that is a waiver of any cause of action growing out of the original breach, and this is the rule even though the original contract was under seal." On examining the case in the 23 Illinois Appellate, we find that it does not use the language as stated by the Penn-

sylvania court, but we are of the opinion that the purported quotation is a correct statement of the law.

In *Winton* v. *Spring, supra,* the parties entered into a contract, one of the parties agreeing to sell certain land to the other for a named amount, $4,000 of which was paid in cash, the balance to be paid on delivery of the deed. The purchaser having paid the $4,000 took and held possession for nearly a year. The parties then made an indorsement on the contract cancelling the same and discharging each other from the covenants therein. In holding the purchaser could not recover the $4,000 which he had theretofore paid, the court said: "The word 'cancel,' applied to the agreement, under the circumstances, means no more than doing away with an existing agreement upon the terms and with the consequences mentioned in the writing."

And as was said in *Ralya* v. *Atkins & Co.* (1901), 157 Ind. 331, 338: "The general effect of a rescission of a contract is to remit both parties to their original rights in respect to the subject-matter thereof. * * * It is evident that when a contract is rescinded by mutual consent or otherwise, no action can be maintained for a breach thereof. * * * It follows that if said contract was rescinded as alleged, appellant could not recover thereon for anything that occurred before or after the rescission." See, also, *Worley* v. *Moore* (1884), 97 Ind. 15. We hold that the contract sued on having been canceled, appellee was not in a position to sue for and recover a commission in the instant case.

The judgment is reversed, with directions to sustain the motion for a new trial and for further proceedings consistent with this opinion.