No. 15,028.

WALLICK ET AL. *v.* EATON.

(134 P. [2d] 727)

Decided February 15, 1943.

Mr. CLARENCE SWAINSON, Mr. FREDERICK P. CRANSTON, Mr. NORMAN H. SMEDEGAARD, for plaintiffs in error.

Mr. HAROLD D. TORGAN, Mr. S. J. EATON, for defendant in error.

*En Banc.*

MR. JUSTICE GOUDY delivered the opinion of the court.

THIS action was instituted in the district court of the City and County of Denver by plaintiffs in error, plaintiffs below, against defendant in error, defendant below, in an attempt to collect a real estate commission for the sale of defendant's property. The parties will hereinafter be designated as they appeared below. The trial court granted a motion for nonsuit at the conclusion of plaintiffs' case and entered judgment of dismissal, and this judgment is here for review.

The pertinent facts are as follows: July 14, 1939, defendant, owner of an apartment house in Cheyenne, Wyoming, gave plaintiffs an exclusive listing contract for the sale of said property at the price of $126,000, agreeing to pay a commission of five per cent if a sale was effected by defendant or by plaintiffs during the life of the contract, which expired December 31, 1939. Plaintiffs conducted correspondence, advertised the property at considerable expense, and showed it to several prospective purchasers. July 22, 1939, one Hoffman, through plaintiffs, offered $75,000 for the property, which defendant rejected. November 6, 1939, one Holliday, who ultimately purchased the property, approached one Leech, vice-president of the Pioneer Realty Company of Cheyenne, deposited a check for $1,000 with Leech and made an offer to him of $85,000 for the apartment house. Leech then dictated a letter which embodied the terms of the offer, and addressed it to defendant in care of one Greenwood, whom Leech believed to be attorney for defendant, and drew a check of the Pioneer Realty Company for $1,000 payable to defendant. Leech took the letter and check with him

and proceeded to the office of Greenwood, showed the letter and check to him and inquired if defendant's apartment house was for sale, to which Greenwood replied that he did not know, but that if the Pioneer Realty Company wished to retain him, he would find out; that he was going to the state capitol, and if Leech had a car, he could take him up that way and he would talk to defendant about it. The Pioneer Realty Company retained Greenwood; Leech took him to defendant's apartments, where he went in and talked to defendant for about half an hour, and asked her if the apartments had been sold, to which she replied in the negative, asked why he inquired and he replied that he was requested to find out. After he left the apartment Leech took him to the capitol, and on the way Greenwood told Leech that he could not give him an answer then, but would let him know later. There is no evidence in the record that Greenwood at this time was attorney for defendant, nor that he told defendant about the letter and check, nor that defendant knew anything about the Holliday offer at any time prior to the cancellation of the exclusive listing contract. November 7, 1939, defendant requested plaintiffs to cancel the exclusive listing contract, stating that she was going away for the winter and did not want to be bothered by having to come back to close a deal; that upon her return she again would give plaintiffs an exclusive listing contract. Plaintiffs stated that they desired an additional ten days in which to work on prospects they then had, and would then let her know. November 17, 1939, defendant asked plaintiffs if any of their prospects appeared likely to purchase, and being informed that they did not, again requested plaintiffs to cancel the exclusive listing contract. Plaintiffs told defendant that as she was going away for the winter and did not wish to be annoyed, that they would cancel the contract provided defendant would relist the property with them on similar terms when she returned in the spring. Plain-

tiffs testified that they relied upon her statement and would not have consented to the cancellation except for her agreement to relist the property. November 18, 1939, the contract was cancelled by plaintiffs by writing across its face the words and figures "Cancelled November 18, 1939, Wallick and Buenger by Leonard H. Buenger." Thereafter defendant informed Greenwood that the listing with plaintiffs had been cancelled, showed him the cancelled contract, and asked him if there was any reason why she could not sell the property now, and he told her that he did not think there was, if she had her listing cancelled. Either that day or the next morning Greenwood discussed with defendant the Holliday offer. November 23, 1939, defendant signed a contract to sell the property to Holliday and his wife. This agreement was prepared by Greenwood, who procured the signatures of all parties, and was completed, Holliday paying $83,500 to defendant and $1,500 to the Pioneer Realty Company, of which Greenwood received $300.

An action, for the same purpose as the instant one, brought in the United States District Court at Denver, in which Greenwood appeared as attorney for defendant, was dismissed for want of jurisdiction, and the present action followed.

Plaintiffs' complaint contains three causes of action, the first upon the theory that the cancellation of the exclusive listing contract was procured by fraud, and should be rescinded and the contract enforced; the second for damages by reason of the fraud; the third upon the theory that the cancellation was procured without consideration and should therefore be rescinded and the agreement enforced.

Counsel for plaintiffs contend that the evidence should have been submitted to the jury upon the theory that intelligent and upright men might draw certain logical inferences from the evidence favorable to plaintiffs. These claimed logical inferences, inter alia,

which we shall notice, are stated by counsel for plaintiffs as follows:

1. That the Pioneer Realty Company sought out Greenwood, not only because they thought he was defendant's attorney, but also because he was her attorney in reality.

2. That Greenwood and defendant must have discussed the Holliday offer when he visited her apartment for one-half hour.

3. That defendant commenced the steps leading to cancellation of the exclusive listing contract because she knew of the Holliday offer.

4. That defendant must have asked Greenwood about the validity of the cancellation before she obtained the same.

5. Defendant must have insisted upon knowing the reason for Greenwood's inquiry and the full particulars of the Holliday offer, during the twelve-day period between the date of said offer and the cancellation of the contract, and while she was negotiating therefor.

6. That it would be unlikely, if not impossible, that an offer of $85,000 for the purchase of a building in a city the size of Cheyenne would be kept a secret from the owner for twelve days, during which she lived on the property and, as she claims, without a suggestion from anyone, relieved herself of the prior commitment to plaintiffs.

7. That Leech, Greenwood and defendant collaborated, or even conspired, to induce plaintiffs to cancel the contract here involved.

Counsel contend that all of the inferences are readily to be drawn from the evidence. We do not agree with counsel, and do not believe that a jury should be allowed to supply by inference the links necessary in plaintiff's proof.

In 24 American Jurisprudence, section 257, page 90, appears the statement: "The rule is that fraud is not presumed as a matter either of law or of fact,

unless under circumstances not fairly susceptible of any other interpretation. Moreover, if fraud is to be presumed, it is, of course, necessary to prove the facts upon which the presumption is to be based, for there can be no presumption from a presumption." In *Marsh v. Cramer*, 16 Colo. 331 (27 Pac. 169), we said, page 334: "It has been well said that fraud must be proved, and is never to be presumed; but, as it can rarely be proved by direct evidence, a resort to presumptive evidence often becomes necessary."

Attempting to apply these rules, counsel for plaintiffs argue that defendant asked plaintiffs to cancel the exclusive listing contract upon the excuse that she was going away for the winter, and would relist the property with them in the spring. There is no evidence that defendant's statements were false, nor that at the time she did not intend to go away and to relist her property in the spring. Counsel also argue that Greenwood and defendant *must* have discussed the Holliday offer at defendant's apartment, and that defendant *must have* known of the Holliday offer before she requested cancellation. The record contains no evidence to that effect, nor as to whether Greenwood was defendant's attorney at the time Leech approached him, nor as to when he became defendant's attorney for the purpose of the suit in the federal court, which is unimportant.

The evidence of fraud must be clear, precise, and indubitable; otherwise it should be withdrawn from the jury, and where it is insufficient it is the duty of the court to grant a motion for nonsuit, or a directed verdict. *Denver & Rio Grande Railroad Co. v. Sullivan*, 21 Colo. 302, 41 Pac. 501; *Goodstein v. Silver Plume Mines Co.*, 79 Colo. 269, 245 Pac. 714; *Kruger v. Smith*, 82 Colo. 380, 260 Pac. 97; *Haefeli v. Ahlstrand*, 101 Colo. 296, 73 P. (2d) 1378.

This leaves for determination only the question as to whether or not it was necessary that there

be a consideration for the cancellation of the contract. It is conceded by defendant that she paid no consideration for the cancellation of the exclusive listing contract. We believe that no consideration was necessary. It is a fundamental rule of law that while a contract remains executory on both sides it may be cancelled by mutual consent of the parties, "the discharge of one party from the obligation to perform further being sufficient consideration for the discharge of the other party from his obligation to perform further." 12 Am. Jur., p. 988, §409; 17 C.J.S., p. 883, §391; *Savage Arms Corp. v. United States,* 266 U. S. 217, 45 Sup. Ct. 30, 69 L. Ed. 253. Many other authorities might be cited, but the point is elementary, and no others are needed.

■■ The rule is that the services of a real estate broker are fully performed, and his commission fully earned, when he has procured a purchaser ready, able and willing to enter into a valid contract of sale upon the terms fixed by the owner. The exclusive listing contract was an executory one, and such a contract may be mutually cancelled, notwithstanding it has been partially performed. *United States Farm Land Co. v. Darter,* 42 Cal. App. 292, 183 Pac. 696; *Denler & Denler Land Co. v. Eby,* 277 Mich. 360, 269 N. W. 203; *Irwin v. State Brokerage Co.* 82 Ind. App. 687, 147 N. E. 531.

The judgment of the trial court that there was no sufficient evidence of fraud, and that no consideration was necessary for the cancellation of the contract, was correct. The judgment is affirmed.