473 P.2d 928

Ray R. SCHOENICK, and Ray A. Bowen
d/b/a Ray A. Bowen Agency,
Plaintiffs-Appellants,

v.

Jerry SMALLEY and Anne E. Smalley, hus-
band and wife, Defendants-Respondents.

No. 10464.

Supreme Court of Idaho.

Aug. 24, 1970.

McFadden & Park, St. Maries, for plain-
tiffs-appellants.

No appearance by respondents.

McFADDEN, Chief Justice.

On February 11, 1968 the defendants-
respondents, Mr. and Mrs. Jerry Smalley,
contacted the plaintiffs-appellants, Ray R.
Schoenick and Ray A. Bowen, doing busi-
ness as the Ray A. Bowen Agency, a real
estate agency, in regard to listing for sale
certain real property owned by the Smal-
leys and located along the St. Maries River
in Benewah County. A listing contract
was signed by the parties, specifying the
terms and conditions of sale and providing
for a 6% commission on the sale price

of $18,500.00 to be paid to the plaintiffs by the Smalleys. The contract also provided that

"THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale, by me or any other person, or of exchange or conveyance of said property, or any part thereof, during the term of your exclusive employment, or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the said commission just the same as if a sale had actually been consummated by you."

The listing agreement originally provided that it was to continue until the property was sold, but in May 1968 the parties modified the contract to provide that it would terminate on August 30, 1968. Prior to the termination date, however, on June 3, 1968, the defendant, Jerry Smalley wrote a letter to the plaintiff, Ray Bowen, stating that

"As of this date, it is our desire to withdraw all properties listed with your office from the open market.

"Ray, as my health isn't going to permit me remaining in St. Maries for any great length of time, we felt that we had better rent the place and return to the East from where we come [sic] in order to obtain prolonged medical assistance from the Naval Hospital."

On the same day that this letter was received, June 4, 1968, the defendant, Jerry Smalley, went to Bowen's office and complained about the way the plaintiffs were handling the sale of the properties and requested the return of the original listing agreement. Bowen, however, refused to return it to him, but did give him a written memorandum acknowledging the withdrawal of the property from the market. Bowen testified at trial that the cancellation memorandum was based entirely upon the representations in the defendant's letter. The memorandum stated that

"I herewith acknowledge the cancellation of the listing for the sale of your property on the St. Maries River effective as of this day *per the letter tendered*." (Emphasis added.)

Approximately one week later, on June 12, 1968, the defendants, through another real estate agency, sold the same property that had been listed with the Bowen Agency to a Mr. and Mrs. Kenneth Olson on the same terms and conditions as were contained in the contract with the plaintiffs. At the time the defendants secured the memorandum of June 4, 1968, they did not know the Olsons or have any prospective purchaser for the property. On June 11, 1968, however, the Olsons came to St. Maries from Montana and inquired at the Bowen agency and at a competing real estate agency concerning available property for sale in the area. The plaintiffs showed the Olsons some property but could not show them the defendants' property because the listing had been withdrawn. After the Olsons had contacted the other real estate agent, that agent learned from the Smalleys that their property was for sale and that the listing with the Bowen agency had been canceled. That agent then introduced the Olsons to the Smalleys and the sale of the property was completed, for which service the Smalleys paid that agent his real estate commission.

The plaintiffs had shown the Smalley property to a number of prospective buyers prior to the cancellation of the listing and had obtained one firm offer to purchase the property in May 1968, which the Smalleys rejected because they did not want to tie up the property with a Veterans' Administration loan as the prospective purchaser desired.

In July 1968, following the sale by the Smalleys to the Olsons, the plaintiffs contacted the Smalleys and claimed that under the terms of their agreement, they were still liable for payment of the commission on the sale of the property. The defendants, however, refused to pay and the present action was instituted in the district

court. Following a trial of the issues, the district court issued a memorandum opinion, treated as findings of fact and conclusions of law under I.R.C.P. 52, wherein it stated:

> "The Court finds that there is insufficient, clear and convincing evidence, to show any fraud, bad faith, or misrepresentation upon the part of the defendants that would invalidate the cancellation memorandum of June 4, 1968."

The court also held that the cancellation memorandum not only canceled the listing of the property, but also terminated any obligation on the part of the Smalleys to pay a commission to the Bowen agency. Accordingly, the court entered judgment for the defendants. The plaintiffs then moved for amended and additional findings of fact, which motion was denied except for the addition of the following finding to the court's findings of fact:

> "At the date of said letter [from Smalley to the Bowen agency], defendants did not desire to withdraw their property from the market, nor did they desire or intend to rent the place or return to the East; nor did they actually do any of these things at any time from and after said date."

The plaintiffs have appealed to this court, contending that the trial court erred in holding that the cancellation memorandum given to the defendants by Bowen terminated the entire contract including the obligation to pay a commission upon withdrawal of the property. The plaintiffs contend that the cancellation memorandum is invalid and ineffectual because procured by fraud, but they also argue that in any event it was no more than an acknowledgement of the withdrawal of the property and was not a release from the obligation to pay the commission.

The trial court relied very heavily upon two cases from other jurisdictions in reaching its conclusion that there was no liability on the part of the defendants. See Wallick v. Eaton, 110 Colo. 358, 134 P.2d 727 (1943); Irwin v. State Brokerage Co., 82 Ind.App. 687, 147 N.E. 531 (1925). Each of these cases, however, is distinguishable from the case at bar. In Wallick v. Eaton, supra, the owner of an apartment house entered into an exclusive listing agreement with a realtor on July 14, 1939. The termination date of the contract was December 31, 1939. On November 17, 1939, however, the seller contacted the realtor and told him that she was going away for the winter and wished to withdraw her property from the market. The realtor consented upon the condition that she would relist the property with him when she returned in the spring, which she promised to do. She then sold the property through another agent. The realtor testified that he canceled the listing of the property solely upon the basis of the seller's representations that she wanted to withdraw the property from the market. To this extent the factual situation between this case and the case at bar is remarkably similar. The key distinction, however, lies in the fact that the court in that case, in holding that the cancellation of the listing was not procured by fraud, stated that

> "There is no evidence that defendant's statements were false, nor that at the time she did not intend to go away and to relist her property in the spring." 134 P.2d at 729.

Similarly, in Irwin v. State Brokerage Co., supra, the defendant seller represented that she was going away for the winter and wanted to withdraw her property from the market and then after procuring a cancellation of the listing sold the property to a prospective buyer, earlier introduced to her by the realtor. In that case there was nothing to indicate that the seller did not actually intend to go away for the winter.

The situation in the case a bar, however, is quite different from that in either of the two cases cited above. The trial court in the present case specifically found that the defendants at no time intended to withdraw their property from the market or rent it or return to the east. All of these representations were admitted by the de-

fendants to be false. The transcript reveals the following testimony by defendant Jerry Smalley:

"Q. Do you recall ever intending to rent your property?

A. No, sir.

Q. Now, this Exhibit No. 3 [letter to Bowen], if you will refer to that again, refers to the fact that you were going to return to the east in order to obtain prolonged medical assistance. Now, did you intend to do anything of that kind?

A. Not to my knowledge. I don't recall any such thing. I have got good care right here at Fairchild Air Force Base and I see no reason to go east for it.

\* \* \* \* \* \*

Q. That was still your intention and desire [to sell the property] on the 4th of June, is that right?

A. To sell it?

Q. Yes.

A. On the 4th of June, be the 4th of this June, too, you bet I wanted to sell it."

Walter v. Libby, 72 Cal.App.2d 138, 164 P.2d 21 (1945), is very similar to the case at bar. In that case, which also involved an exclusive listing agreement, the seller requested the realtor to cancel the listing, representing to the realtor that he wanted to take the property off the market because it was not a good time to sell and that he would probably relist the property with the realtor at a better time when the trees were in bloom and the vines leafed out. After procuring the cancellation, the seller then sold the property. In holding the cancellation of the agreement to be void because procured by fraud, the court stated

"Appellant's misrepresentation as to his present intention, and his suppression of the vital fact that he was about to dispose of the ranch through his own efforts were obviously calculated to and did induce respondent to give his consent to the revocation of the agency and to surrender the instruments evidencing it. Appellant could not take advantage of respondent's consent thus procured." 164 P.2d at 24.

■ The essential elements of fraud are (1) a misrepresentation of a material past or existing fact; (2) the untruth or falsity of such representation; (3) the speaker's knowledge of its falsity or ignorance of its truth; (4) his intention that it should be acted upon by the person to whom it is made; (5) ignorance of its falsity on the part of the person to whom it is made; (6) reliance on a representation; (7) his right to rely upon it; and (8) his damage occasioned thereby. See Shrives v. Talbot, 91 Idaho 338, 421 P.2d 133 (1966). This court has also said that fraud must be established by clear and convincing evidence. See Shrives v. Talbot, supra; Thomson v. Marks, 86 Idaho 166, 384 P.2d 69 (1963); Andrus v. Irick, 87 Idaho 471, 394 P.2d 304 (1964).

■ As there is no conflict in the evidence dealing with the falsity of the statements contained in the defendant's letter, it is impossible for this court to reconcile the trial court's finding of fact as to the falsity of the statements contained in that letter of June 3, 1968 with the trial court's conclusion that there was insufficient clear or convincing evidence of misrepresentation. Under this situation the rule discussed in Woodman v. Knight, 85 Idaho 453, 380 P.2d 222 (1963), is applicable:

"Where the evidence is nonconflicting and undisputed and permits only one conclusion, a finding or conclusion drawn by the trial court contrary thereto is not binding on appeal, and is of no force or effect. Claunch v. Jones, 75 Idaho 271, 270 P.2d 1002; Clark v. Clark, 58 Idaho 37, 69 P.2d 980; Harding v. Home Investment, etc., Co., 49 Idaho 64, 286 P. 920, 297 P. 1101; In re Tarrant's Estate, 38 Cal.2d 42, 237 P.2d 505, 28 A.L.R.2d 419; San Diego Trust & Sav. Bank v. San Diego County, 16 Cal.App. 2d 142, 105 P.2d 94, 133 A.L.R. 416; Sylvain v. Page, 84 Mont. 424, 276 P. 16, 63 A.L.R. 528; Hooper v. First Ex-

change Nat'l Bank (C.A.9th) 53 F.2d 593; 5 Am.Jur.2d, Appeal & Error, § 845. And where such undisputed facts are conclusive of the issue between the parties this court will order judgment entered as required by the facts and the law. Claunch v. Jones, supra; Bussell v. Barry, 61 Idaho 216, 102 P.2d 276; Work Bros. v. Kinney, 7 Idaho 460, 63 P. 596; Commercial Bank v. Lieuallen, 5 Idaho 47, 46 P. 1020; San Diego Trust & Sav. Bank v. San Diego County, Cal., supra." 85 Idaho at 456–457, 380 P.2d at 224.

Defendant Jerry Smalley testified that he did not remember writing the letter to Bowen and did not know how Bowen obtained it, however, the trial court in an amendment to the findings of fact specifically found that Smalley did write the letter and that Bowen received the letter on or before June 4, 1968. These latter findings are fully sustained by the record.

■ An owner cannot take advantage of a broker's consent to cancellation of a listing agreement giving the broker an exclusive right to sell realty, so as to defeat an action by the broker to recover his commission on the sale of the realty by the owner, where the broker's consent to cancellation was procured through fraud. Walter v. Libby, 72 Cal.App.2d 138, 164 P.2d 21 (1945). See also M. G. Chamberlain & Co. v. Simpson, 173 Cal.App.2d 263, 343 P.2d 438 (1959). It is the determination of this court that the trial court erred in its conclusion to the effect that the evidence was insufficient to show any misrepresentation which would invalidate the cancellation memorandum.

■ The memorandum upon which the defendants rely as a cancellation of the listing agreement recited that it was made as "per the letter tendered," which letter contained the misrepresentations. This evidence is unrefuted and on the face of it reflects that the misrepresentations were of facts which were material to the execution of the purported cancellation and which facts were relied upon by the plaintiffs. Thus the effectiveness of the pur-

ported cancellation was destroyed by such misrepresentations. Walter v. Libby, supra. Under the terms of the exclusive listing agreement the plaintiffs were entitled to a commission upon a sale by the Smalleys or by an agent on their behalf during the term of the exclusive listing. See Walter v. Libby, supra; Kimmell v. Skelly, 130 Cal. 555, 62 P. 1067 (1900); 12 C.J.S. Brokers § 94, pp. 219–221. The judgment in this case must thus be reversed.

The parties stipulated that if the court should determine that attorneys fees are allowable in this action, the court should determine the amount to be awarded. This cause being reversed, this issue is a matter for the trial court's consideration.

The judgment of the trial court is reversed and the cause remanded for further proceedings. Costs to plaintiffs-appellants.

McQUADE, DONALDSON, SHEPARD and SPEAR, JJ., concur.