615 P.2d 116

STATE of Idaho ex rel. Wayne L. KID-
WELL, Attorney General, and Tom D.
McEldowney, Commissioner of Finance,
Plaintiff-Appellant,

v.

MASTER DISTRIBUTORS, INC., an Ida-
ho Corporation; Kenneth Merrill, Sr.,
and Kenneth Merrill, Jr., Individuals;
Master Manufacturing Company and In-
ternational Soap Products, Defendants-
Respondents.

Nos. 12780, 12907.

Supreme Court of Idaho.

July 17, 1980.

Rehearing Denied Sept. 5, 1980.

Distributors, Inc., Kenneth Merrill, Sr., and Kenneth Merrill, Jr.

Ellison M. Matthews, Boise, for defendant-respondent Master Manufacturing Co.

BAKES, Justice.

Plaintiff appellant State of Idaho brings this appeal from a district court decision in an action brought against defendant respondents under the Idaho Consumer Protection Act. The state sought injunctive and restitutionary relief on behalf of all Idaho consumers who purchased water conditioners from defendant respondents. Following a court trial, the district court enjoined defendant respondents Master Distributors, Inc., Kenneth Merrill, Sr., and Kenneth Merrill, Jr., from further violations of the Idaho Consumer Protection Act.

Between September, 1972, and July, 1973, defendant respondent Master Distributors, Inc., a closely held Idaho corporation owned and controlled by defendant respondents Kenneth Merrill, Sr., and Kenneth Merrill, Jr., sold United Standard Commercial water conditioners in a door to door sales campaign in several southern Idaho communities. Master Manufacturing Co. was a manufacturer and wholesale distributor of United Standard Commercial water conditioners located in California and wholly owned by Lowell Foletta. Master Manufacturing provided Master Distributors, Inc., scripts for use in telephone solicitations, a written and illustrated sales presentation to be given in the homes of sales prospects, and the United Standard Commercial water conditioners.

David H. Leroy, Atty. Gen., and Jean R. Uranga, Deputy Atty. Gen., Boise, for plaintiff-appellant State of Idaho.

William J. Tway and Anton Hohler, Boise, for defendants-respondents Master

The sales program operated initially as follows. Trained telephone solicitors would place calls to prospects selected from local phone directories. An attempt was made to contact every residential household in the

communities being worked. The telephone solicitor would represent that he or she was conducting a survey on water pollution. Using the telephone script provided by Master Manufacturing, the phone solicitor would ask several survey-type questions, some of which could have been interpreted as having relevance to local water pollution problems. If the survey questions revealed that the sales prospect did not own his or her own residence or already owned a water conditioner the solicitor would thank the prospect for his or her time in helping to fight water pollution and hang up. However, if the questions revealed that the prospect did own his or her residence and did not own a water conditioner, the solicitor would attempt to arrange an appointment for delivery of a free gift allegedly given in appreciation for the caller's assistance in the water pollution survey.

If an appointment was made, a salesman would deliver the gift. The salesman would state that he was a "factory representative" from the "factory advertising department" and that he wanted the prospect's opinion about how the factory should advertise an unspecified product which would reduce water pollution and save its purchaser money. The salesman would then make the written sales pitch developed by Master Manufacturing, discussing the water pollution and economic problems associated with hard water and conducting demonstrations to dramatize the problems caused by hard water. Nine pages into the written pitch, the salesman would introduce the product, a United Standard Commercial water conditioner, which the prospect, as a "specially selected customer," could purchase that day only for a "very special advertising basis price" if the purchaser would agree to receive calls from other prospective buyers and write a letter to Master Distributors giving an opinion of the product to be used in future sales presentations. The sales prospect was told that the community had been divided into sales areas and that one purchaser in each area was entitled to the very special advertising basis price.

The water conditioner unit was represented to be a commercial unit superior in capacity, construction and durability to water softeners typically used in residential installations. A "lifetime warranty" was orally offered at the sales presentation. Purchasers were also offered free a three year supply of soap from International Soap Products Co. as part of the special benefits available to customers selected for the special advertising basis price. A complete sales presentation would take between one and three hours.

In 1972 the "retail price" of the water softener unit was said to be $1,056.30 and the special advertising basis price $798. In 1973 the retail price was represented to be $1,135.94 and the special advertising basis price $898. Every sale made in Idaho by Master Distributors was made at the special advertising basis prices, $798 for 1972 sales and $898 for 1973 sales. Every sale made by Master Distributors was made by home solicitation. Between 300 and 400 units were installed in Idaho by Master Distributors.

Sales efforts began in September, 1972. The consumer protection division of the Attorney General's office immediately began to receive consumer complaints about the program. Between November, 1972, and January, 1973, attorneys for Master Distributors met with the Attorney General. In January, 1973, Master Distributors executed an "Assurance of Voluntary Compliance" in which Master Distributors agreed that henceforth the telephone solicitors would disclose in the initial telephone contact that they were representing a retail seller of water conditioners; that Master Distributors would cease engaging in illegal referral sales in which purported discounts were offered to purchasers in consideration for assistance in an advertising program; that a three day cancellation period would be added to the written sales contract; and that Master Distributors would cease giving a three year supply of International Soap Products Co. soap to advertising price basis purchasers. Complaints continued, however.

In August, 1973, the Attorney General's office on behalf of the state initiated this suit against Master Distributors, Kenneth Merrill, Sr., and Kenneth Merrill, Jr. The complaint alleged violations of the Idaho Consumer Protection Act and sought a permanent injunction enjoining the defendants from further violations of the act and an order enabling all Idaho purchasers to obtain restitution from Master Distributors. On June 18, 1974, the state moved to amend its complaint to add Master Manufacturing and International Soap Products Co. as defendants, and this motion was granted.

A court trial was held in July and August of 1977. In addition to the facts noted above, the trial testimony of the state's witnesses, a qualified expert in water conditioning technology and dealers of Culligan, Lindsay and Servisoft equipment, indicated that the United Standard Commercial water conditioner was of residential and not commercial capacity, was of an obsolete design, did not have sufficient resin regeneration capacity to maintain its water conditioning capacity and could not over time perform all functions for which it was advertised. The water softener dealers testified that modern equipment of a capacity equivalent to the United Standard Commercial softener retailed in 1972 and 1973 for between $550 and $675, installed, compared to the special advertising basis prices of $798 and $898 for which Master Distributors units were sold and installed.

Fifteen consumers appeared at trial and described the home sales presentations given by Master Distributors sales personnel. They also testified that while the salesmen made oral representations that the product was covered by a "lifetime guarantee," they were given a warranty card after the units were installed in their homes which stated that to obtain service under the lifetime warranty they would have to bear the costs of disconnecting the unit, freight charges to and from the factory in California, and the cost of re-installing the unit in their home.

Following the state's case in chief, the district court dismissed Master Manufacturing and International Soap Products Co.

from the suit for alleged failure of the state to comply with I.C. § 48–606(2) of the Idaho Consumer Protection Act. Also at the close of the state's case in chief the district court noted that if it were to enter judgment at that time it would permanently enjoin Master Distributors, Kenneth Merrill, Sr., and Kenneth Merrill, Jr., from violating the Idaho Consumer Protection Act but that it would not afford restitutionary relief to consumers. The defendants then rested and relief was granted to the state as noted. The state argues on appeal that (1) the district court made material errors and omissions in its findings of fact and conclusions of law; (2) the court's failure to grant the consumers restitutionary relief constituted an abuse of discretion; and (3) the court erred in granting the motion for involuntary dismissal of defendant respondent Master Manufacturing at the close of the state's case. We find merit in several of the state's contentions and remand the cause to the district court for further proceedings consistent with the opinion we express below.

I

The state in its amended complaint filed August 7, 1974, by the Attorney General as authorized by I.C. § 48–606 charged the defendants with several acts or practices alleged to be violations of the Idaho Consumer Protection Act. Specifically, the state charged the defendants with soliciting sales by telephone without clearly and affirmatively revealing that the telephone contact was made in an attempt to effect a sale of goods and without disclosing the trade name of the soliciting business or the nature of the product offered for sale, in violation of I.C. § 48–603A; with making appointments for home sales presentations under the guise of arranging delivery of a free gift, in violation of I.C. § 48–603A(2); with making false and misleading representations about the functions and effectiveness of the water conditioners sold by defendant Master Distributors, Inc., in violation of I.C. § 48–603(5); with representing that the water conditioners had an inflated

retail value and claiming to offer large price "discounts" to "specially selected purchasers" when in fact every sale to every Idaho customer was made at the discounted price, in violation of I.C. §§ 48–603(11) and –603(17); and with making faulty installations of units in consumers' homes, not successfully correcting problems caused thereby, and not honoring a free home trial offer, in violation of I.C. § 48–603(17).

■ The state challenges the district court's finding that Master Distributors and its customers "invariably entered into negotiations common in the market place from time immemorial—the seller puffing his product and starting high, the buyer questioning the price and expressing little interest until the bargain is struck." Our reading of the trial testimony finds no support for this finding. Testimony of the fifteen consumers and the two Master Distributors salesmen who appeared at trial indicates that no price negotiations or bargaining occurred during sale of the units. The script of the home sales presentation, which was admitted into evidence, instructed sales personnel to disclose the "retail price" of the unit and then to offer the unit to the prospect for a specific special advertising basis price if the consumer purchased on the day of the sales presentation. The evidence is that all sales in Idaho were made at the special advertising basis price which was $798.00 in 1972 and $898.00 in 1973.[1] There is no testimony which supports the trial court's finding that the price of the water conditioners was subject to negotiation or bargaining.

■ The district court also found that "Master Distributors, Inc., through its sales personnel, offered identical water softeners for sale for prices ranging from $1,056.00 to $750.00 and 'discounted' and sold identical water softeners for prices ranging from $898.00 to $750.00." The uncontroverted evidence, however, is that Master Distributors, Inc., represented the retail price of the

units to be $1,056.30 in 1972 and $1,135.94 in 1973. The district court has failed to distinguish between the prices represented by Master Distributors to be retail prices, at which no sales occurred, and the so-called discount prices at which all sales to Idaho consumers were made. Having read the trial record, we are compelled to conclude that the special advertising basis prices, claimed by Master Distributors to reflect a substantial price discount, were simply Master Distributors' retail prices and were the prices at which all sales were made; that the claimed price discounts were unrelated to any advertising program of Master Distributors; and that the discount prices were available to every prospective customer and not just to a select few, as represented by Master Distributors.

■ The district court also found that although sales personnel for Master Distributors used a written sales presentation script prepared by Master Manufacturing, they "varied [their] sales presentation to prospective customers by the use, non-use and variations in the language of the sales presentation script provided by Master Manufacturing Co." The court found that the evidence "fails to support a finding that the complaints of the individual consumers who testified at trial can be correlated with all sales made by the defendants."

However, every sale made by Master Distributors was a product of the home sales presentation program designed by Master Manufacturing. The Merrills, Master Distributors' salesmen, and the consumers who testified stated that the sales presentation outlined in the written script prepared by Master Manufacturing Co. was utilized in all home contacts. Most of the consumer witnesses testified that the script was read verbatim by the salesmen in the home presentations; other consumers stated that the sales personnel delivered what appeared to be a memorized sales presentation. Master Distributors' sales employees stated that

1. One consumer testified that after he contracted to purchase a unit for $798 he was offered a price reduction to $750 if he would pay in cash the balance due on the credit contract. The

original price at which the product was offered to him and which he agreed to pay, however, was $798. No "negotiations" occurred at the time he agreed to purchase the unit.

they were repeatedly instructed to read the script to prospects, to adhere to the precise language of the script, to reply to questions with prepared answers contained in the script, and, if necessary, to call the sales office for assistance if the customer proposed questions unanticipated by the script. The Merrills testified that they were told by Lowell Foletta that the telephone solicitation-home sales presentation routine was carefully designed to be delivered as written. The substantial proof that the telephone solicitation and home sales presentation pitches prepared by Master Manufacturing were utilized by Master Distributors to effect all Idaho sales made by Master Distributors was not contradicted by the testimony of any witness. There is no evidence that substantial variations from the written standardized presentations were made by Master Distributors' staff other than the changes made pursuant to the "Assurance of Voluntary Compliance" executed by Master Distributors in January, 1973.

■■ Where the trial court's findings of fact are clearly erroneous and against the weight of the evidence, those findings will be set aside on appeal. *Russ Ballard & Family Achievement Institute v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 548 P.2d 72 (1976); I.R.C.P. 52(a). Where the evidence is not conflicting and produces only one conclusion, a finding by the trial court contrary to the evidence will be set aside on appeal. *Schoenick v. Smalley*, 93 Idaho 786, 473 P.2d 928 (1970). On remand, the district court shall make new findings of fact to accurately reflect the evidence produced at trial regarding Master Distributors' price practices and standardized sales techniques.

The state argues that the district court also erred in finding that buyers did not rely upon any representations made by Master Distributors in its sales presentation; that Master Distributors' sales representations did not materially affect the buyers' decisions to purchase a water conditioner; and that no moneys were acquired by the defendants by means of its sales practices. We need not address the accura-

cy of these findings in view of our discussion below and our decision to remand this case to the district court for further proceedings.

## II

■ The Idaho Consumer Protection Act, I.C. §§ 48–601 to –619, prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the State of Idaho. I.C. §§ 48–603 and –603A specify certain prohibited practices. I.C. § 48–603(17) further forbids "[e]ngaging in any act or practice which is otherwise misleading, false or deceptive to the consumer" where a person knows or in the exercise of due care should know that he has been or is engaging in such an act or practice. I.C. § 48–604(1) provides:

"48–604. INTENT OF LEGISLATURE—ATTORNEY GENERAL TO MAKE RULES AND REGULATIONS.— (1) It is the intent of the legislature that in construing this act due consideration and great weight shall be given to the interpretation of the federal trade commission and the federal courts relating to section 5(a)(1) of the federal trade commission act (15 U.S.C. 45(a)(1)), as from time to time amended . . . ."

15 U.S.C. § 45(a)(1) reads as follows:

"Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

Federal case law as it has developed under this provision of the Federal Trade Commission Act, although not binding is persuasive in application of the Idaho Consumer Protection Act.

■ An act or practice is unfair if it is shown to possess a tendency or capacity to deceive consumers. "The law is settled that a finding of 'tendency and capacity to mislead' is sufficient and that actual deception need not be shown." *Vacu-Matic Carburetor Co. v. Federal Trade Commission*, 157 F.2d 711, 713 (7th Cir. 1946), *cert. denied* 331 U.S. 806, 67 S.Ct. 1188, 91 L.Ed. 1827 (1947). Likewise, proof of intention to de-

ceive is not required for finding that an act is unfair or deceptive. *Federal Trade Commission v. Sterling Drug, Inc.,* 317 F.2d 669 (2d Cir. 1963). *See Trans World Accounts, Inc. v. Federal Trade Comm'n,* 594 F.2d 212 (9th Cir. 1979); *Montgomery Ward & Co. v. Federal Trade Comm'n,* 379 F.2d 666 (7th Cir. 1967); *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wash.2d 298, 553 P.2d 423 (1976); *Testo v. Dunmire Oldsmobile, Inc.,* 16 Wash.App. 39, 554 P.2d 349 (1976). Actual damage to the public need not be shown to establish a trade practice as unfair or deceptive if it is shown that the practice possesses a tendency or capacity to deceive. *Resort Car Rental System, Inc. v. Federal Trade Comm'n,* 518 F.2d 962 (9th Cir. 1975), *cert. denied sub nom. McKenzie v. U. S.,* 423 U.S. 827, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

The Supreme Court of the United States has interpreted the impact of the Federal Trade Commission Act in 1934 as follows:

"Competition may be unfair within the meaning of this statute [the Federal Trade Commission Act] and within the scope of the discretionary powers conferred on the Commission, though the practice condemned does not amount to fraud as understood in courts of law. Indeed there is a kind of fraud, as courts of equity have long perceived, in clinging to a benefit which is the product of misrepresentation, however innocently made." *Federal Trade Comm'n v. Algoma Lumber Co.,* 291 U.S. 67, 81, 54 S.Ct. 315, 321, 78 L.Ed. 655 (1934).

The effect of the Federal Trade Commission Act on the customs of the marketplace has been stated as follows:

"The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious. The best element of business has long since decided that honesty should govern competitive enterprises, and that the rule of caveat emptor should not be relied upon to reward fraud and deception." *Federal Trade Comm'n v. Standard Education Society,* 302 U.S. 112, 116, 58 S.Ct. 113, 115, 82 L.Ed. 141 (1937).

The Supreme Court of the United States has also noted that

"It has long been considered a deceptive practice to state falsely that a product ordinarily sells for an inflated price but that it is being offered at a special reduced price, even if the offered price represents the actual value of 'the product, and the purchaser is receiving his money's worth." *Federal Trade Comm'n v. Colgate-Palmolive Co.,* 380 U.S. 374, 387, 85 S.Ct. 1035, 1044, 13 L.Ed.2d 904 (1965).

■ The state contends that the court's findings of fact and conclusions of law reflect an erroneous belief that the state must prove in a consumer protection action that consumers in fact relied upon deceptions or misrepresentations made by the defendant and that the defendant's acts were a proximate cause of the defendant's acquisition of moneys from consumers in order that the state obtain restitutionary relief for Idaho consumers. It is our conclusion that the district court's analysis is not consistent with the intent and goals expressed in the Idaho Consumer Protection Act.

I.C. § 48–607 reads as follows:

"48–607. ADDITIONAL RELIEF BY COURT AUTHORIZED.—In any action brought by the attorney general, the court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any practice in this act declared to be unlawful, including in the case of repeated violations the revocation of a license or certificate authorizing that person to engage in business in this state, or both."

In *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 82 Wash. 265, 510 P.2d 233 (1973), the Washington Supreme Court discussed R.C.W. 19.86.080 which is very similar to I.C. § 48–607:

"The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful."

The Washington Supreme Court noted that restitutionary relief was adjunct to the court's general broad and flexible equitable power to compel a wrongdoer to restore the status quo extant prior to his illegal acts.

"Suits for injunctive relief and restitution enforce the laws of the particular jurisdiction in the public interest by restoring the status quo. Restitution orders are appropriate and necessary as a part of equitable relief. . . . The recovery of that which has been illegally acquired and which has given rise to the necessity for the injunctive relief not only restores the property to the party but insures future compliance where it is assured a wrongdoer is compelled to restore illegal gains." 510 P.2d at 241, citations omitted.

In *People v. Superior Court of Los Angeles County*, 9 Cal.3d 283, 107 Cal.Rptr. 192, 507 P.2d 1400 (1973), the California Supreme Court similarly interpreted its unfair trade practice statutes to permit the trial court to require the defendants to make or offer to make restitution to consumers falling victim to deceptive or unfair trade practices. At the time the complaint was filed Section 17535 of the California Business & Professions Code provided that false or misleading advertising "may be enjoined," but the statute did not expressly authorize the trial court to order restitution. The California court, noting that the statute did not restrict the court's general equity jurisdiction, held that

"[i]n the absence of such a restriction a court of equity may exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the status quo ante as nearly as may be achieved." 107 Cal.Rptr. at 194, 507 P.2d at 1402.

■ The Supreme Court of the United States in other statutory contexts has, without specific statutory authority, upheld the power of federal courts to grant restitution as an ancillary remedy in the exercise of the courts' general equity powers to afford complete relief. *See, e. g., Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); *United States v. Moore*, 340 U.S. 616, 71 S.Ct. 524, 95 L.Ed. 582 (1951); *Porter V. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). In *Securities Exchange Comm'n v. Texas Gulf Sulphur Co.*, 446 F.2d 1301 (2d Cir. 1971), *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971), *reh. den.*, 404 U.S. 1064, 92 S.Ct. 734, 30 L.Ed.2d 753 (1972), it was held that the Securities Exchange Commission Act's failure to authorize equitable relief ancillary to the injunctive relief specifically authorized in the statute did not preclude the district court's granting of restitutionary relief: "[T]he SEC may seek other than injunctive relief in order to effectuate the purposes of the Act, so long as such relief is remedial relief and is not a penalty assessment." 446 F.2d at 1308. It is our opinion that restitutionary relief is appropriate in an action brought by the Attorney General under the Idaho Consumer Protection Act where such relief would be required to reestablish the status quo ante which existed prior to the defendant's deceptive or unfair acts.

■ Restitution is not an automatic or mandatory remedy for violations of the Idaho Consumer Protection Act; it is one the courts *may* invoke. However, the district court's discretion to award restitutionary relief should be exercised with a view toward the purposes of the act. The Idaho Consumer Protection Act indicates a legislative intent to deter deceptive or unfair trade practices and to provide relief for consumers exposed to proscribed practices. Businesses faced only with the possibility of a prospective injunctive order would have little incentive to avoid commercial practices of dubious legality. Only a substantial likelihood that defendants who have engaged in unfair or deceptive trade practices will be subject to restitutionary orders will

deter many with a mind to engage in sharp practices.

"We do not deter indulgence in fraudulent practices if we permit wrongdoers to retain the considerable benefits of their unlawful conduct.

"As one court has stated, 'The injunction against future violations, while of some deterrent force, is only a partial remedy since it does not correct the consequences of past conduct. To permit the [retention of even] a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement [of the law] is to be achieved. One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom.' (Fns. omitted.) (*S.E.C. v. Golconda Mining Co.*, (S.D.N.Y.1971) 327 F.Supp. 257, 259–60 . . .)" *Fletcher v. Security Pacific Nat. Bank*, 23 Cal.3d 442, 153 Cal. Rptr. 28, 33, 591 P.2d 51, 57 (Cal.1979). *Cf. Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (district court's discretion to award back pay under equal employment opportunity provisions of Civil Rights Act of 1964 must be exercised to promote the statutory purpose of eliminating discrimination and remedying injury suffered through past discrimination; absence of employer's bad faith not sufficient reason to deny back pay award). *See Head v. Timkin Roller Bearing Co.*, 486 F.2d 870 (6th Cir. 1973).

Upon remand and after drafting new findings of fact, the district court shall reconsider the state's request for restitutionary relief.

### III

We next consider the state's argument that restitutionary relief is appropriate for all 300 to 400 Idaho consumers who purchased water conditioners from Master Distributors, Inc., during 1972 and 1973, not just the fifteen consumers who appeared at trial. The state contends that the testimony of the consumers who appeared at trial established that a standardized deceptive or unfair sales practice was utilized to effect all sales by Master Distributors, Inc., in Idaho and that any equitable relief which may be afforded consumers by the district court on remand should be extended to all Idaho consumers who were subject to the same deceptive or unfair practices.

I.C. § 48–607 provides that "[i]n an action brought by the attorney general, the court may make additional orders or judgments as may be necessary to restore to *any person* in interest any moneys or property, real or personal, which may have been acquired by means of any practice in this act declared to be unlawful . . . .." (Emphasis added.) An order granting consumers restitutionary relief or permitting them to rescind their agreements with Master Distributors, Inc., may be applied to all consumers affected by the same trade practices found by the court to be unfair or deceptive under the act. Equitable relief need not be limited to the consumer witnesses who testified at trial. In reaching the same conclusion, the Washington Supreme Court reasoned as follows in interpreting R.C.W. 19.86.080, which is virtually identical to I.C. § 48–607:

"To limit restitution to the consumers who testified at trial would unduly complicate future consumer protection trials. Consumer witnesses would recount repetitious claims of deceptive practices and prolong the litigation." *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wash.2d 298, 553 P.2d 423, 439 (1976).

The Washington Supreme Court approved the trial court's order establishing a procedure for effecting restitutionary relief. The order directed the defendants to take certain steps to restore funds to each affected consumer and provided a procedure to allow the defendants to challenge each consumer claim before a court-appointed master and, if necessary, ultimately before the trial court. *Accord, Commonwealth v. DeCotis*, 366 Mass. 234, 316 N.E.2d 748 (1974). *See also Kugler v. Romain*, 58 N.J. 522, 279 A.2d 640 (1971).

It will be incumbent upon the district court, if on remand it awards equitable

relief to all Idaho consumers affected by the defendant respondents' deceptive practices, to establish a procedure by which consumer claims may be efficiently and fairly processed.

"[T]here is a tremendous need to find a simple, inexpensive solution which will accomplish the greatest possible good for the greatest possible number of consumers who have common problems and complaints vis-a-vis the seller. If the only available route has been pursuit of a private remedy by individual victims of the unfair practices . . . , such a rule would require an unrealistic expenditure of judicial energy and would be inconsistent with current trends in consumer protective legislation." *Kugler v. Romain, supra,* 279 A.2d 649 at 649.

### IV

The state's next contention is that the district court erred in dismissing defendant respondent Master Manufacturing Co. from the suit on the ground that the state failed to comply with I.C. § 48–606(2). Master Manufacturing Co. moved to dismiss the suit against it on the grounds that the Attorney General failed to give direct written notice to it pursuant to I.C. § 48–606(2). I.C. § 48–606(2) provides:

"48–606. PROCEEDINGS BY ATTORNEY GENERAL.—. . .

"(2) Unless the attorney general finds in writing that the purposes of this act will be substantially and materially impaired by delay in instituting legal proceedings, he shall, before initiating any legal proceedings as provided in this section, give notice in writing that such proceedings are contemplated to the person against whom proceedings are contemplated and allow such person a reasonable opportunity to appear before the attorney general and execute an assurance of voluntary compliance as in this act provided."

An "Assurance of Voluntary Compliance" was executed by defendant respondent Master Distributors, Inc., before the Attorney General on January 31, 1973. This lawsuit was filed against defendant respondent Master Distributors, Inc., Kenneth Merrill, Sr., and Kenneth Merrill, Jr., on August 1, 1973. On June 20, 1974, the state moved to add defendants Master Manufacturing Company and International Soap Products to its complaint. The state argues that Master Manufacturing Company's close association with Master Distributors, Inc., and involvement with Master Distributors, Inc.'s, Idaho sales efforts indicate that an agency relationship was maintained between Master Distributors and Master Manufacturing which precluded the necessity of the state's giving written notice to Master Manufacturing that deceptive practice proceedings were contemplated by the state against it.

Kenneth Merrill, Sr., testified that Master Distributors' sales program, including the telephone script and home sales presentations, was developed and supplied by Master Manufacturing and Lowell Foletta, Master Manufacturing's president and sole owner. Merrill, Sr., stated that he was in daily telephone contact with Master Manufacturing during the period that Master Distributors was selling in Idaho and that Master Distributors sent a weekly sales report to Master Manufacturing. Lowell Foletta traveled to Idaho to assist Master Distributors in hiring and training sales personnel. Master Distributors' sales personnel who made home contacts were told by Foletta and Merrill to follow precisely the sales scripts. The sales scripts created and supplied by Master Manufacturing stated that the home sales personnel were "factory representatives" from the "factory advertising department." The pricing structure utilized by Master Distributors, including the amount of the represented retail price and of the "advertising discount," was set by Master Manufacturing. Newspaper advertisements used in hiring sales personnel were provided by Master Manufacturing. Merrill, Sr., testified that the name Master Distributors was chosen for his sales company because of the similarity the name had to Master Manufacturing and that there were other businesses associated with Master Manufacturing in California, Arizona and other states incorporated under the name Master Distributors, Inc. Merrill, Sr., testified that he kept Foletta informed

about the negotiations between the Attorney General's office and Master Distributors which led to the Assurance of Voluntary Compliance in January, 1973, and that Foletta was aware of the contents of the assurance at the time it was executed. Merrill, Sr., also testified that he believed the sales pitches which were revised to comply with the terms of the assurance were approved by Master Manufacturing before being put into use.

Upon the evidence introduced at trial, the district court found that an agency by estoppel relationship existed between defendants Kenneth Merrill, Sr., Kenneth Merrill, Jr., Master Distributors, Inc., and Master Manufacturing, but that no express agency existed between Master Distributors, Inc., and Master Manufacturing. There is adequate evidence in the record to sustain the trial court's finding that an agency by estoppel relationship existed between Master Distributors and Master Manufacturing. We deem especially significant for purposes of the notice provisions contained in I.C. § 48–606(2) the uncontroverted testimony that Master Manufacturing was kept informed about the complaints raised by the Attorney General's office and the proceedings leading up to execution of the Assurance of Voluntary Compliance by Master Distributors. There was also uncontroverted testimony that Master Manufacturing approved changes made in the script pursuant to the assurance.

Generally, notice to an agent is notice to its principal. *Sulik v. Central Valley Farms, Inc.*, 95 Idaho 826, 521 P.2d 144 (1974). It is our opinion that the Attorney General's notice to Master Distributors, Inc., that its sales program was in violation of the Idaho Consumer Protection Act served, in this case, as adequate notice under the requirements of I.C. § 48–606(2) to Master Manufacturing that legal proceedings under the Idaho Consumer Protection Act were contemplated as a result of the Idaho sales program in which Master Manufacturing was involved as outlined above. The district court erred in granting defendant respondent Master Manufacturing Company's motion for dismissal on the ground that proper written notice pursuant to I.C.

§ 48–606(2) was not given Master Manufacturing.

I.C. § 48–603 provides in part that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful . . . ." Where Master Manufacturing Company created and furnished the sales program utilized by Master Distributors in Idaho, participated in the hiring and training of Master Distributors' sales personnel, was involved on a nearly daily basis with the ongoing operation of the sales program in Idaho, and knowingly distributed its products in Idaho through Master Distributors, Inc., Master Manufacturing Company shall be subject to liability under the Idaho Consumer Protection Act for any unfair or deceptive practices utilized in the Idaho sales program. *See Regina Corp. v. Federal Trade Comm'n*, 322 F.2d 765 (3d Cir. 1963); *C. Howard Hunt Pen Co. v. Federal Trade Comm'n*, 197 F.2d 273 (3d Cir. 1952) (one who places in the hands of another a means of competing unfairly participates in a deceptive or unfair act or practice).

The district court judgment below is reversed and the matter remanded for further proceedings consistent with this opinion.

Costs to appellant. No attorney fees allowed.

DONALDSON, C. J., and SHEPARD, McFADDEN and BISTLINE, JJ., concur.