[Civ. No. 8276. First Appellate District, Division One.—November 2, 1932.]

ELIZABETH JANSEN, Respondent, v. JOSEPH M. JANSEN, Appellant.

Guy B. Graham and William Bronsten for Appellant.

Oliver O. Clark and James F. McBryde for Respondent.

PARKER, J., *pro tem.*—The purpose of the action was to dissolve the bonds of matrimony theretofore and then existing between the parties. Plaintiff alleged extreme cruelty and failure to provide. Defendant denied the allegations of the complaint, seeking no affirmative relief. Certain allegations were made and denials thereto entered, which went to the character and amount of property held by the parties, of which mention will be made hereinafter. The trial court awarded to plaintiff an interlocutory decree of divorce upon the grounds of extreme cruelty, a nonsuit having been entered on the failure to provide count. The said decree further determined certain property to be community property and divided the same between the parties. After judgment defendant moved for a new trial which was denied. Prior to the hearing of the motion for a new trial and after notice of intention to move for a new trial the plaintiff noticed a motion to award her additional counsel fees to resist the said motion. Counsel fees were awarded plaintiff. Defendant appeals from the judgment and from the order allowing the said counsel fees.

It is first contended by appellant that the evidence is insufficient to uphold the trial court's conclusion that the defendant was guilty of extreme or any cruelty toward plaintiff. The main ground of this contention is that the charges of the plaintiff lack corroboration. It must be con-

ceded that the testimony of the plaintiff herself shows a continued course of cruelty, aggravated by specific incidents of overt acts of violence and abuse. On this there can be no question, though the appellant in his testimony makes general and specific denial. The contention, however, as stated, is that there is a complete lack of corroboration, and that without corroboration the facts could not be found. It will be conceded that no divorce may be granted upon the uncorroborated testimony of either party. (Civ. Code, sec. 130.) Corroboration is rather an elastic term, and whether or not testimony is corroborated depends upon the facts and circumstances of the particular case under discussion. Corroboration may be slight or it may be so compelling as to become actually direct evidence. The law has laid down no standard by which its weight or sufficiency may be gauged. To go into detail of the facts of the instant case would be but an epic of discord and lack of harmony, too often encountered in nearly all cases of this character. The weight of the corroborating testimony was primarily one for the trial court to be determined with reference to the truth or falsity of the main testimony. We have carefully read and re-read the entire transcript of testimony, and while it may be true that the testimony offered as corroborative may support different conclusions or permit varying inferences to be drawn therefrom, yet it does support the inference drawn by the trial court. To repeat, we decline to analyze the testimony offered, upon the grounds that to do so would be to invade, to some extent, the province of the trial court and would make only more confusing the trial practice. If it were apparent that the corroborating testimony was in no sense corroborative or that it was not corroborative of jurisdictional facts or of facts necessary to a judgment, our course would naturally be different. But as a rule of law and appellate practice we must decline to set up what might be classed as a standard of corroborative sufficiency in the absence of a necessity therefor. We find sufficient evidence from which the trial court might conclude as it did and there our inquiry rests.

The next claim of appellant is that the trial court erred in determining that certain property was the community property of the spouses. It may be conceded that the property in question was purchased with community

funds. The record discloses, without conflict as far as appellant's theory goes, that the source of the money going into the purchase of the property was the earnings of the husband. It is true that the wife claims that some of her separate money was invested and that likewise some of her earnings helped defray the cost. Passing these claims, the husband and appellant insists that the money paid was money earned by him during coverture and earned by his daily labor. If this were the entire state of the record, we can hardly imagine any claim that could be made negativing the 'fact that the property was and is community property. In the verified complaint it is alleged that the property is community property save and except that to the extent of one thousand dollars it is the separate property of the wife. The answer does not deny that the property is community property. The answer denies that it is the separate property of plaintiff and denies that she has a one thousand dollar interest therein or any interest whatsoever. Defendant then alleges that the property is held in joint tenancy between the parties. At the trial it was stipulated that the property was held in joint tenancy.

It may be well to note that this is the extent of the record. There is nothing to show how the joint tenancy was created, whether by deed between the spouses or by deed from a third person or otherwise. However, there is sufficient in the record from which we may infer that when the property was purchased the original vendor conveyed to the spouses by a deed of joint tenancy. Appellant contends that regardless of the source of the purchase price, and regardless of the fact that these funds were admittedly community funds, the taking of the property as joint tenants destroyed the community interest, once and for all, and was in the nature of and equivalent to a property settlement by the parties, it being their intention that their property be held equally, with right of survivorship. No authority is cited nor is there a word of testimony to establish the fact or the assumed intent. The undenied and undeniable fact is that the parties put their community property in the form of joint tenancy. But we are pointed to no authority nor is there any line of reasoning that supports the conclusion that by that act the community character of the property was immediately terminated.

It seems that whenever the subject of community property arises it calls for a more or less philosophical-legal treatise involving marital relations from the date of the origin of species down through the Spanish laws and customs to the present date. It is at times difficult to reconcile the rulings on the nature of community property and the application of the theories to the changing modes of transfer and holding. Much of this difficulty is overcome when we recognize the community property rule, as between the spouses themselves, as possessing certain peculiarities necessary to round out the true purpose and intent of marriage both as a civil contract and as a highly social relationship.

Dispensing with any academic discussion or review of the authorities it is now generally conceded and recognized that the courts are invested with full power to determine the status of the property of both or each of the spouses, regardless of the name of either in which title to such property stands, and the recitals of whatever transfers there may have been between the spouses regarding such property or in transfers to one or the other, are merely *prima facie* evidence of ownership, and raise only disputable presumptions as to whether such property is the separate or community property of the parties. (*Hamilton* v. *Hubbard,* 134 Cal. 603 [65 Pac. 321, 66 Pac. 860]; *Alferitz* v. *Arrivillaga,* 143 Cal. 646 [77 Pac. 657]; *Salveter* v. *Salveter,* 206 Cal. 657 [275 Pac. 801]; *Steere* v. *Barnet,* 54 Cal. App. 589 [202 Pac. 166]; *Estate of Jolly,* 196 Cal. 547 [238 Pac. 353].)

We conclude that there was no error in the trial court's holding that the property was community. No error is assigned in the manner of distribution if the property was community, other than the claim that no cause of action was proven. This latter point has hereinbefore been determined.

As to the award of counsel fees to resist the motion for a new trial, the only error assigned is that the motion was heard at a time other than the time noticed. The record does not disclose this error, it being urged merely in the way of naked allegation. The motion was noticed for December 18, 1928, at 2 o'clock P. M. of said date. Appellant contends that without further notice the motion was heard at 11 o'clock A. M. of said date. The minutes

of the court disclose that the motion was heard on December 18, 1928, without disclosing the hour of hearing other than to state that the motion came on to be heard. We assume nothing in contravention of the regularity of the proceeding. The claim noted is the only specification of error on the order.

The judgment is affirmed as is the order allowing counsel fees.

Knight, Acting P. J., and Cashin, J., concurred.