578 P.2d 681

**ED SPARKS & SONS, a sole proprietorship, Plaintiff-Respondent,**

v.

**JOE CAMPBELL CONSTRUCTION COMPANY, Joe Campbell, and Fireman's American Insurance Company, Defendants-Appellants.**

No. 12240.

Supreme Court of Idaho.

May 8, 1978.

Rehearing Denied May 31, 1978.

R. Don Bistline, Pocatello, for defendants-appellants.

Gary L. Cooper of Racine, Huntley & Olson, Pocatello, for plaintiff-respondent.

SHEPARD, Chief Justice.

This is an appeal from a judgment awarding plaintiff-respondent Ed Sparks & Sons the balance of the contract price set forth in a construction contract. The principal question presented is whether there was sufficient evidence of a mutual mistake to sustain the district court's reformation of the contract and thereby exclude certain items otherwise required to be performed by Sparks. We reverse.

Joe Campbell Construction Company held a contract with the State of Idaho to demolish a building and construct a parking lot on the campus of Idaho State University. In turn, Sparks submitted a bid to Campbell offering to perform the demolition and site restoration work. Sparks' bid was for $21,079 and, according to Sparks, did not include that portion of Campbell's work requiring concrete and blacktopping work. Campbell and Sparks met at and inspected the job site, and that evening the terms of the contract were discussed in Campbell's office. It is undisputed that Campbell made a statement to the effect that he wanted to wash his hands of the whole project except the blacktopping work. There is a dispute in the evidence as to whether at the termination of that meeting Sparks took the complete blueprints and specifications for the entire job for additional study or, as the trial court found, that Sparks took only that portion of the blueprints and specifications which dealt with the demolition and site restoration portion of the work while the remainder of the documents relating to the construction phase of the work remained in Campbell's possession. Thereafter, Campbell's attorney prepared the contract on one of Sparks' proposal forms. The following week the parties met, read the contract, penciled in some changes and signed the document. Clearly, that written contract required Sparks to perform all portions of the work excepting only the "blacktopping." Sparks testified that he read the contract term "blacktopping" to include curbs and gutters (concrete work).

Sparks proceeded with the demolition and site restoration work. Sparks' foreman, John Roe, testified that at no time while they were on the job was the concrete work mentioned. Roe also testified that when

the demolition work was approximately three-quarters complete, he consulted with Campbell regarding leveling the dirt and Campbell indicated that he would send over his "concrete man," although he ultimately sent over engineers from the school. At the conclusion of the demolition and site restoration work, Roe consulted with Campbell to determine if the work was satisfactory, and Campbell asked who was supposed to put down the base. When told it was his responsibility, Campbell said, "Fine."

Thereafter, Campbell called Dale Sparks, a partner in the company, to inform him that Sparks was to do the concrete work. Sparks denied they had responsibility to do the work. Thereafter letters were sent to Sparks, and when he continued to refuse, Campbell did the remainder of the work and subtracted the cost thereof from the contract price otherwise owed Sparks. It is that amount for which Sparks initiated this action.

■ This case was before the Court earlier in *Sparks v. Campbell,* 96 Idaho 454, 530 P.2d 938 (1974). At that time a summary judgment had been awarded to Campbell. Sparks appealed on the basis that there was a genuine issue of material fact undetermined, *i. e.,* whether there was a "mutual mistake." The Court reversed and remanded the case for trial, providing that Sparks had to meet his burden of proof as to a mutual mistake with "clear and satisfactory evidence." Proof of mutual mistake requires a clear and satisfactory showing that the written instrument fails to represent the parties' intentions at the time of its execution. *Collins v. Parkinson,* 96 Idaho 294, 527 P.2d 1252 (1974); *Bilbao v. Krettinger,* 91 Idaho 69, 415 P.2d 712 (1966); *Metropolitan Life Ins. Co. v. McClelland,* 57 Idaho 139, 63 P.2d 657 (1936); *Brinton v. Johnson,* 41 Idaho 583, 240 P. 859 (1925); *Panhandle Lumber Co. v. Rancour,* 24 Idaho 603, 135 P. 558 (1913); G. Bell, Handbook of Evidence for the Idaho Lawyer 197 (2d ed. 1972). Campbell argues that the evidence at best only supports the finding of a unilateral mistake rather than a mutual mistake. We agree.

■ Ordinarily, this Court would rely upon a trial court to weigh the evidence. *Panhandle Lumber Co. v. Rancour, supra.* However, in this case the evidence did not meet a standard of "clear and satisfactory evidence." That standard imposes a need for certainty, and here it is clear that the trial court's usage of language, such as "tends," "apparently," "tentatively" and "could," is incompatible with a view that the evidence has certainty and is highly probable.

■ Additionally, certain evidence obviously relied upon by the court to demonstrate mutual mistake was erroneously admitted. Exhibit J, and its attachment, consists of a photostatic copy of a list of principal contract bidders for the Idaho State University project, which is covered with phone numbers, notes and mathematical computations made by Sparks. The computations are not labeled in any way and the figures thereon are not in and of themselves intrinsically understandable. Although Sparks had failed to produce the document in response to interrogatories, it was offered in the rebuttal portion of the trial to prove that the concrete work was not intended to be included in the contract bid figure. The document does not in and of itself show what was or what was not included in the bid. While business records are ordinarily admissible if they meet certain conditions, I.C. § 9–414, we see no relevancy of the exhibit to the issues presented at trial. At best, it *may* have indicated the basis upon which Sparks submitted bids to persons other than Campbell. There is no showing on the exhibit as to how Sparks calculated his bid to Campbell. Bids to other contractors had no necessary effect on the negotiations between Sparks and Campbell. Sparks' testimony and explanation of the exhibit merely explained how it provided the basis for his bids to other contractors. Exhibit J is most similar to an exhibit held inadmissible in *Jackson v. Blue Flame Gas Co.,* 90 Idaho 393, 412 P.2d 418 (1966).

The trial court reasoned that since the printed legend on the Sparks proposal form

indicated that Sparks engaged in "Demolition Excavation Site Clearance," it was indicative that the parties did not intend Sparks to perform work beyond the scope of that legend. That legend is clearly in conflict with the typed and written information in the body of the document. Even assuming that the legend on the document was proof that Sparks had not theretofore done concrete work, such in no way indicates the intent of the parties entering into the contract or reflects on whether a *mutual* mistake was made by the parties. Conversely, there is nothing in the record to indicate that Campbell did concrete work. Sparks contends that apparently. Campbell intended to subcontract the concrete work to some other party. It is just as reasonable to assume that since Sparks claimed he did not do concrete work, that Sparks intended to subcontract the concrete work to some other party.

The essence of the trial court's decision was that when adding Campbell's estimated costs of doing the work for which Campbell contended Sparks was responsible (including the concrete work), a total figure was stated of $18,700. The trial court stated, "It simply is not reasonable to believe that defendant [Campbell] would have awarded plaintiff [Sparks] an $18,700 job for $21,079. This would have been a 'gift' to plaintiff [Sparks] of nearly $2,400." Applying the same line of reasoning following modification of the contract, the trial court would have had to believe that Campbell intended to give Sparks a $12,000 job for $21,079, or a "gift" of $9,079. We find this to be inherent illogic in the reasoning of the trial court.

■ Reformation of a contract is proper after a finding of mutual mistake. *Collins v. Parkinson, supra; Bilbao v. Krettinger, supra*. However, the record here does not contain sufficient evidence to sustain the findings of the trial court of mutual mistake, and they are set aside. *Russ Ballard & Family Achievement Inst. v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 548 P.2d 72 (1976); *Blankenship v. Myers*, 97 Idaho 356, 544 P.2d 314 (1975); *In re Estate of Bogert*, 96 Idaho 522, 531 P.2d 1167 (1975).

The judgment is reversed, and the cause is remanded to the trial court for entry of an appropriate judgment for the defendant. Costs to appellant.

McFADDEN, DONALDSON and BAKES, JJ., and SCOGGIN, J. pro tem., concur.