777 P.2d 255

**Carol HALL, Plaintiff–Appellant,**

v.

**Anthony HALL, Defendant–Respondent.**

No. 16981.

Supreme Court of Idaho.

July 19, 1989.

Swanson & Setzke, Chtd., Boise, for plaintiff-appellant. Raymond W. Setzke, Jr., argued.

Weston & Richardson, Boise, for defendant-respondent. Richard E. Weston argued.

Merrill & Merrill, Pocatello, for amicus. Wesley F. Merrill argued.

Slip Opinion No. 100 of November 18, 1988, is withdrawn and this opinion substituted therefore.

## ON REHEARING

HUNTLEY, Justice.

This appeal concerns the characterization of real property in a divorce action. More specifically, the issue is whether, when a deed conveys title to a husband and wife "For Value Received," parol evidence may be utilized to establish that a portion of the estate conveyed was to have been conveyed as a gift. After trial in the magistrate division, the realty was held to be part community in nature and part separate. The wife appealed to the district court where the decision was affirmed. The Idaho Court of Appeals reversed and remanded, 112 Idaho 641, 734 P.2d 666, ruling that the deed could not be varied or amended by such parol evidence. We concur.

The property in question is a ranch located near Horseshoe Bend, Idaho. Carol and Anthony Hall purchased the ranch in 1981 from the husband's grandparents for $60,-000. The purchase money was community property. The deed states:

For Value Received, THOMAS R. FAULL, SR., also known as Thomas R. Faull, Thos. R. Faull, Thomas Richard Faull, Sr., and Thomas Faull and FLORA M. FAULL, husband and wife, grantors, do hereby grant, bargain, sell and convey unto ANTHONY M. HALL and CAROLYN S. HALL, husband and wife, the grantees, ... the following described premises....

At trial the husband's grandmother, Mrs. Faull, testified that the ranch was worth about $100,000 at the time of the sale. She indicated that the value above the purchase price was meant to be a gift to the husband alone. The wife's objection to this testimony was overruled.

The magistrate awarded the ranch to the husband and characterized the ranch as 60% community property. The wife was awarded $30,000 as reimbursement for her share of the community funds used to buy the ranch. The magistrate ruled that the remaining 40% was a gift to the husband and therefore was his separate property. The ranch was determined to be worth $100,000 when it was acquired and worth $120,000 at the time of the divorce. The $20,000 enhancement was divided between the parties by the ratio of community and separate property interests found. After deducting community debts from the community's share of the enhancement, the wife was awarded $33,651.29 for her share of the community interest in the ranch.

Carol Hall brings this appeal to challenge the court's characterization of the property. She contends: (1) that Mrs. Faull's testimony concerning donative intent violated the parol evidence rule; (2) that I.C. § 55–606 prohibits the Faulls from changing the terms of the recorded deed; and, (3) that the finding of a gift was not based on clear and convincing evidence. The first issue is dispositive; hence we will not address the second and third issues.

■■■ Carol Hall contends that the deed by which she and Anthony took the ranch is plain and unambiguous, and therefore cannot be varied by parol evidence. The only pertinent language of the deed is as stated hereinabove. Where possible, the court should give effect to the intention of the parties to a deed. *Gardner v. Fliegel,* 92 Idaho 767, 450 P.2d 990 (1969). Where the language of a deed is plain and unambiguous the intention of the parties must be determined from the deed itself, and parol evidence is not admissible to show intent.[1] *Id.* Oral and written statements are generally inadmissible to contradict or vary unambiguous terms contained in a deed. *French v. Brinkman,* 60 Cal.2d 547, 35 Cal.Rptr. 289, 387 P.2d 1 (1963); *Neeley v. Kelsch,* 600 P.2d 979 (Utah 1979). If the language in the deed is ambiguous, then evidence of all the surrounding facts and circumstances is admissible to prove the parties' intent. *Gardner v. Fliegel, supra.* The parol evidence rule does not preclude the use of extrinsic evidence to explain the parties' intent when the provisions of a writing are ambiguous. *Ness v. Greater Arizona Realty, Inc.,* 117 Ariz. 357, 572 P.2d 1195 (App.1977). Where, as here, the consideration clause clearly recites that the transfer was made "For Value Received," parol evidence is not admissible to contradict the deed by attempting to show the transfer was in part a "gift" rather than "for value."

The testimony of Mrs. Faull, relied upon by the trial court to support its characterization of the ranch property, was not admissible. Therefore, we remand to the magistrate court for a re-characterization of the property after a review of the admissible evidence and for adjustment of the property division as appropriate. Costs to appellant, no attorney fees awarded.

BISTLINE and JOHNSON, JJ., concur.

SHEPARD, J., sat but did not participate due to his untimely death.

BISTLINE, Justice, specially concurring.

Carol Hall's first brief filed in this Court suggested "that the Court review the en-

---

1. There are certain recognized exceptions such as where a deed is one of several contemporaneous documents or where it can be established that the grantee is a trustee for others.

tire record for the 'clear and convincing evidence' on which the lower court based its decision." In turn I have asked Justice Huntley, Justice Bakes, and Justice Johnson to favor me by pointing to *any* evidence tending to prove a gift other than the testimony of Flora Faull, Tony Hall's grandmother. No answer has been forthcoming. This is not surprising, because there is no other evidence of any substance, and certainly none which mounts to the level of clear and convincing.

The controversy boils down to this. The Halls at the time of the divorce had been married long enough to have daughters of ages 14 years and 17 years. They came to Idaho from California. All of their assets were community property. The purchase of the farm property was made with community funds. They received a warranty deed made out to both of them. When some three or more years later the marriage fell apart, Carol Hall was informed in the divorce action that the realty was not *theirs*, only part of it was, and that a substantial part belonged to Tony Hall by reason of it having been gifted to him by his grandparents, namely Flora Faull and her husband Thomas Faull.

Neither Tony nor the grandparents can produce a single stitch of documentary evidence in support of this claimed gift of real property. Real property can be given, no doubt. But a writing is required, I.C. § 9-503, and that writing is called a gift deed.

The only written instrument by which the Faulls were divested of their ownership was their deed [2] naming Tony Hall and Carol Hall as grantees. The issue presented to the magistrate in the first instance, and in turn to a judge of the district court acting in an appellate capacity, and then to the court of appeals, was one of first impression—not only in Idaho, but anywhere—namely whether an oral gift of real property can be sustained, or, if not precisely that issue, whether a warranty deed wholly unambiguous on its face can be modified judicially by oral testimony into a hybrid which includes being secretly a gift deed as well, but only to the husband—to the wife's substantial detriment.

This case should have come to a final conclusion when the Court of Appeals passed judgment on it over two years ago:

■ In the instant case, the deed conveyed 'For Value Received,' the entire estate, with the reservation of a life estate by the grantors, to 'Anthony M. Hall and Carolyn S. Hall, husband and wife.' The deed conveyed the fee to the Halls unambiguously. Only the consideration clause was open to explanation by parol evidence. The only 'value received' shown by the evidence was the $60,000 paid by the Halls from community funds. The deed was clear and unambiguous as to the grantees and the estate conveyed. Therefore, *testimony claiming that the $40,000 'gift' was solely to the husband was in reality an attempt not to clarify the amount of consideration but to vary other unambiguous terms of the deed.* When offered for this purpose, the testimony violated the parol evidence rule.

The law of community property supports our conclusion. The ranch was acquired during the marriage with community funds. Thus the ranch was presumed to be community property. *Stanger v. Stanger*, 98 Idaho 725, 571 P.2d 1126 (1977). This presumption can be rebutted, and the burden of proof lies with the party seeking to prove the separate character of the property. *Id.* The magistrate here relied on the Stanger case. In *Stanger*, the husband gave an annuity contract to his parents in exchange for a farm. The husband alone was named in the deed, and as obligor on the annuity contract. The annuity contract, as with the payment in this case, did not compensate the grantors for the full value of the farm. Mrs. Stanger claimed that any gift was to both spouses. The husband was able to meet the burden of proving that the gift was his separate property. He provided gift tax

2. The deed reserved a life estate in the Faulls in one of the residences on the property. At the time of trial Mr. Faull was 88 years old and Mrs. Faull was 86.

returns showing a separate gift. His parents executed new wills to reflect the gift, and he presented oral testimony on the donative intent. All of this evidence was admitted. Unlike the instant case, the deed in *Stanger* listed only the husband as grantee. Therefore, none of the evidence contradicted or varied the deed, rather it was consistent with the deed and admissible as evidence to overcome the presumption that the ranch was entirely community property. Moreover, nowhere in the *Stanger* opinion do we find that a parol evidence rule objection was made to the extrinsic evidence offered to show the intent of the grantors.

■ Here, the magistrate treated the form of the deed as being inconclusive in determining the status of the property. He relied upon *Stanger* and *Bowman v. Bowman*, 72 Idaho 266, 240 P.2d 487 (1952). In *Bowman* the court stated that the trial court in a divorce action

> is invested with full power to determine the status of the property of both or each of the spouses, regardless of the name of either in which the title to such property stands, and the recitals of whatever transfers there may have been between such spouses regarding such properties or in transfers thereof to the one or other of them, are merely prima facie evidence of ownership, and raise only disputable presumptions as to whether such properties are the separate or community property of the parties to such transfers. (Citations omitted.)

*Id.* at 270, 240 P.2d at 489 (*quoting Jansen v. Jansen*, 127 Cal.App. 294, 15 P.2d 777, 778 (1932). *Bowman*, like *Stanger*, involved a deed naming only one spouse. A deed granting property to only one spouse shows the acquisition of property during marriage, and without more, the presumption that the property is community applies. *Stanger v. Stanger, supra.* Under *Bowman* the separate character of the property can be established by tracing the source of the funds used to acquire the property to the separate property of the spouse named in the deed. This is also true where the proper-

ty can be shown to be acquired by gift, bequest, devise or descent. I.C. § 32–903.

■ To overcome the community presumption the party named in the deed must present evidence proving the separate source of the property. In cases where the deed names the spouse, but does not indicate that the property is separate property, other evidence, including parol evidence, is necessary. This parol evidence does not vary or contradict the deed and is therefore admissible. However, *where the deed names both spouses, as husband and wife*, the same *parol evidence showing a separate interest necessarily varies the deed.* This evidence is barred by the parol evidence rule unless the rule is inapplicable to a divorce case. In *Suchan v. Suchan*, 106 Idaho 654, 682 P.2d 607 (1984), our Supreme Court applied the general rule of construction of an unambiguous contract to an agreement between spouses involved in a divorce. We see no reason to treat a deed differently. Our courts are not guided by a separate set of evidence rules in divorce cases. A party seeking to rebut the presumption that property acquired during marriage is community property must stand or fall on admissible evidence.

The determination of donative intent is a factual one which will not be disturbed on appeal if supported by substantial and competent evidence. *Stanger v. Stanger, supra.* The same is true for the trial court's characterization of property. *Bowman v. Bowman, supra.* The fact finder is given broad discretion in weighing the evidence to arrive at the facts. However, before that discretion is exercised the evidence must pass the legal threshold of admissibility. The testimony of Mrs. Faull regarding the separate gift to the husband was not admissible for the purpose to which it was put.

*Hall v. Hall*, 112 Idaho 641, 642, 734 P.2d 666, 667 (App.1987) (emphasis supplied).

As the minutes of this Court will reflect, the necessary votes to grant the petition for review were those of Justices Shepard,

Donaldson and Bakes, with both Bistline, J. and Huntley, J. voting to deny. Two years later the case is still with this Court, when it might have been disposing of other appeals. Obviously there has been concern as to the applicability of the parol evidence rule. As is noted by the dissenting opinion of Bakes, Chief Justice, he is strongly of the view that the Court of Appeals erred in holding that rule applicable. I am willing to concede that it may appear to be a problem, yet it must be kept in mind that this peculiar *Hall* set of facts should never surface again.

Solely out of deference to the earnest supplications and cautions of Justice Bakes as set out in his opinion, I would prefer that this Court hinge its decision on the other ground which has been urged upon us, namely that the quantum and quality of evidence which was presented to establish that the warranty deed also was intended to serve as a secret gift deed to Tony Hall fell far short of mounting to the level of clear and convincing.

In my review of some of the authority cited by Justice Bakes, I was led backward in point of time to *Claunch v. Whyte*, 73 Idaho 243, 249 P.2d 915 (1952), a case which is much like the one now before us. The opinion was authored by Justice Taylor and joined by Justices Givens, Porter, Keeton, and Thomas—all of whom were in my view extremely capable and conscientious jurists.

The question of a grantor's intent came up in that case—which involved a daughter (and her husband) claiming that a mother's deed to her had been delivered with intent to make a gift. The trial judge held for her. The daughter had testified that her mother's deceased husband at the time of his last illness had expressed a wish that the daughter have the property. Said this Court of that evidence: "Sufficient here that it is regarded as the weakest kind of evidence."

In one of the cases which this Court cited for the foregoing proposition, *Herbert v. Lankershim*, 9 Cal.2d 409, 71 P.2d 220 (1937), the California Supreme Court, *en banc*, said as to the question of whether or not there is substantial evidence in support of the plaintiff's case, it is always a question of law for the court, and in determining this question, "the credulity of courts is not to be deemed commensurate with the facility or vehemence with which a witness swears.... *Oral evidence, of which there is no satisfactory independent corroboration, is the weakest kind of evidence known to the law.*" 71 P.2d at 251. (emphasis added.)

In the *Claunch* case, where the named grantee had possession of the deed in question, this Court noted that the issue was whether there was clear and convincing evidence that manual delivery had been made unconditionally, that is, not with the understanding that it would not become effective until the death of the grantor. This Court held:

Admitting that there was no consideration for the deed and contending, as she does, that it conveyed the property to her as a gift *inter vivos* the defendant, Phyllis Whyte, brings herself within the rule that such gifts are not presumed and the burden is on the beneficiary to establish the gift. *Lo Presti v. Manning*, 125 Cal.App. 442, 13 P.2d 1002; 38 C.J.S., Gifts, § 65. *Where the donee stands in a fiduciary or confidential relationship to the donor the burden is increased to the extent of requiring the beneficiary to establish the gift by clear and convincing evidence.*

' * * * where the gift is to executrices who are shown to be fiduciaries the burden of proof is upon such donees *to clearly and unequivocally prove a gift in the first instance,* and to so prove it that there would be no uncertainty as to the intent (and other requisite concomitants) on the part of the donor nor any question of undue influence exerted by the donee upon or over the donor or advantage taken of the confidential relationship existing between the parties.' *In re Estate of Randall*, 64 Idaho 629, at page 640, 132 P.2d 763, 768, 135 P.2d 299.

And in *Blake v. Blake,* 69 Idaho 214, 217, 205 P.2d 495, 498 (1949), where the respondents were found to be fiduciaries, it was said:

'* * * the burden of proof was on respondents to prove a gift or transfer of appellant's one-sixth share in the estate to Mrs. Jessie M. Blake by *clear, satisfactory, convincing and unequivocal evidence.'* (Emphasis added.)

Here, where insofar as anyone other than Flora Faull knew of the purported gift from her and Thomas Faull to Tony, the only deed of the property was the warranty deed in exchange for $60,000.00 paid by Tony and Carol Hall. None of the members of this Court in 1952 experienced any trouble in *Claunch* that "[t]he clear weight of the evidence is against the 'trial court's' finding. It follows that the finding is not supported by the evidence and will not support the judgment." 73 Idaho at 250, 249 P.2d at 922.

The facts and circumstances of this case are far less favorable to Tony Hall than was so with the would-be donee in the *Claunch* case. Here there is not even a deed, nor any other scintilla of substantial evidence. Apparently the magistrate was of the view that the gift was made because of the "the facility or vehemence" with which Flora Faull swore to it on the witness stand. The law applicable on appellate review is otherwise as stated in the *Claunch* case. This Court should not have granted review, but, inasmuch as it did, it should also specifically affirm the court of appeals on the additional basis of the failure to prove a gift by clear and convincing, and unequivocal evidence. The failure of the Court to fulfill its function in this regard can only lead to the spawning of future cases such as this.

Although Judge Smith in his written decision mentioned "other evidence tending to show a gift" and that the $60,000.00 purchase price was arrived at for tax reasons—estate and gift tax and capital gains tax reasons as in *Stanger*[3]—the record is devoid of any evidence of gift tax returns.

Judge Smith broke down his clear and convincing analysis into two segments, "It is *clear* that a gift was intended ... There is *convincing* evidence that both spouses knew the purchase was at much less than fair market value."

Nowhere in the record can I find (nor does any other member of the Court come to my aid) any evidence other than the oral testimony of Flora Faull. Obviously she could be expected to testify on Tony's behalf, but, just as in *Claunch v. Whyte,* her oral testimony, wholly unsupported by any documentation or any other witness, is the weakest kind of evidence known in the law. It is not substantial evidence, and a far cry from clear and convincing. The very fact that the Faulls conveyed to Tony and Carol Hall all of their interest in the property (reserving only a life estate) would make it a legal impossibility to at the same time supposedly orally transfer some interest in the very same property to their grandson Tony—whether by an actual written delivered deed in exchange for a valuable consideration, or by an actual written deed given only by reason of love and affection. What the Faulls couldn't do, and didn't do, in writing, they had no chance of success in doing with Flora Faull's oral testimony which, though not coming under the *indicia* of self-serving as to her own pecuniary interest, was certainly self-serving as to her grandmotherly interest in seeing to it that her grandson received the lion's share of the marital community estate.

Moreover, as pointed out in Carol Hall's first brief filed in this Court, and as has gone unnoticed by the Court of Appeals, and in turn this Court (other than here) I.C. § 55–606 stands as a complete bar to Tony Hall's attempt to impose a gift on the realty which he and Carol purchased from Thomas and Flora Faull. That section provides:

**Conclusiveness of conveyance—Bona fide purchasers.**—Every grant or conveyance of an estate in real property is conclusive against the grantor, also against everyone subsequently claiming under him, except a purchaser or encum-

---

3. *Stanger v. Stanger,* 98 Idaho 725, 571 P.2d 1126 (1977).

brancer, who in good faith, and for a valuable consideration, acquires a title or lien by an instrument that is first duly recorded.

The trial transcript, p. 159, shows that Carol in addition to objecting to Mrs. Faull's testimony on parol evidence grounds also objected on the grounds that I.C. § 55–606 precluded Mrs. Faull from testifying for the purposes of modifying or changing the terms and conditions of a warranty deed in which she was the grantor. Were one to indulge in the fantasy that Tony Hall could produce a gift deed to the same property which was executed and delivered, prior to the warranty deed conveying to Tony and Carol, under the provisions of I.C. § 55–606, unless the gift deed was recorded prior to the warranty deed which was for a valuable consideration, the gift deed would be second in time and inferior to the warranty deed. It would be valueless; the grantors having conveyed away their estate to Tony and Carol for a valuable consideration would have nothing left to give away.

In this *Hall* case, there is no testimony which points to any specific time when a gift was made. Thomas Faull did not testify at all, yet he is said to be one of the two giftors. The trial court noted that Mr. Faull was "88 years of age and apparently in ill health." R. 21. This may be correct, but as nearly as I can ascertain, if it is, at best it is correct *surmise*. Nowhere in the transcript can it be found that any witness said his absence was due to ill health—hence, use of the word "apparently".

The trial court also stated that "both the Halls testified at trial that the ranch was 'a *very good* buy.'" This was said to constitute *"convincing evidence* that *both* spouses knew the puchase price was at much less than fair market value." R. 20.

Carol Hall said very little at trial. With certainty it can be said that she said no such thing. She did say that the purchase of realty was a good buy. In the past 20 or 30 years most purchases of realty have been good buys. Tony Hall was the main witness on the gift issue, but after more than three readings of his testimony, I am unable to find where he stated that the purchase was a very good buy, or even that it was a good buy.[4]

Other evidence which militates against the trial court's finding of a gift of real estate to Tony having been established by clear and convincing evidence (oral testimony) is Tony's testimony that in 1980 he and his mother were planning on entering into a contract of purchase whereunder the Faulls would sell to the Halls the same property which Tony and Carol did purchase a year later.[5] His testimony was to the effect that the concern he and his mother had was that state and federal taxes on the deaths of the Faulls would result in loss of the property. (See Appendix A attached.) While it is permissible to do anything legal which will avoid taxes, it would not be permissible to enter upon a scheme to sell a $100,000.00 property for $60,000.00 and make a secret gift of $40,000.00 to avoid inheritance tax. Flora Faull testified that there was no gift tax paid on the purported gift. Tony's claim that he was given $40,-000.00 of real property—tax free—was in furtherance of a conspiracy to defraud the government—whether the parties making the claim knew it or not. Fortunately, the scheme did not come to full fruition when the Court of Appeals held that the parol evidence rule did not allow such testimony.

But also militating strongly against the evidence being clear, convincing, and unequivocal, there was an inference to be drawn from the lack of any testimony from the attorney who was involved in drawing the title-retaining contract of May 1980, whereunder the Faulls would sell to Tony and his mother for the same price, $60,-000.00, for which they did sell to Tony and

---

4. Attached hereto as Appendix "A" are pertinent portions of Tony Hall's testimony, and of Carol Hall, and *all* of Flora Faull's testimony.

5. Strange, to say the least, the contract recited that Tony Hall was a married man dealing with his sole and separate property. The appeal record shows only that anything owned by Tony and Carol was community property. Perhaps his mother was loaning him his share of the $2500 down payment.

Carol in November of 1981. It can readily be inferred that, assuming there was in the minds of Tony, his mother, and grandmother Flora Faull, a plan to avoid taxes, and make a gift of $40,000.00 to Tony, but without evidencing it, the attorney advised them that a gift tax return would have to be made. But such a return was not made; yet, such a return would have been some credible documentary evidence upon which proof of a gift could have been largely predicated.

And unlike the circumstances present in *Claunch v. Whyte*, 73 Idaho 243, 249 P.2d 915 (1952), where the attorney who prepared the deed testified concerning his employment to do so, the attorney who it may be reasonably assumed drew the deed in this case did not testify. The inference readily drawn is that his testimony would not have aided Tony's claim that he was the silent beneficiary of a $40,000.00 gift of real property.

Flora's testimony (see appendix), was not even close to clear and convincing. Moreover, it is clear that this 86–year–old grandmother was, and naturally so, confused by reason of her having in 1980 signed a title-retaining-contract to sell to Tony and his mother, and then in the following year signed an outright conveyance of the same property to Tony and his wife. Keeping in mind that the entire thrust of Tony's case was to establish a gift which excluded his wife from a gift of the same property which community funds was purchasing, so that the gift would be all for Tony, nothing for Carol, observe this statement which Flora made on the witness stand, and which demonstrates her evident confusion of the two transactions:

Q Yes. I believe you stated earlier that many times Mrs. Hall was present during these conversations.

A Yes.

Q And you're stating that she agreed that the $60,000,00 would not purchase all of the ranch,....

A Well,....

Q .... right? That there was ... excess value and that the excess value would be Mr. Hall, Tony Hall's property, is that right?

A Yes, that's right, as an estate, that *and my daughter's, and it was theirs together.* (Indiscernible) sixty thousand we sold to them to protect it from this—tax, we thought.

Finally, it would have amounted to constructive fraud for Carol's husband, who stands in a fiduciary relationship with her, and his grandparents to enter into a transaction which everyone but Carol thought included a $40,000.00 gift to Tony—while at the same time she was led into the natural belief that for $60,000.00 cash raised from the sale of community assets, she and Tony were acquiring the property in question. This is not suggesting actual intentional fraud. It is suggesting that the plan, if any, to save taxes at the expense of taxing authorities in the later divorce action was seized upon as a device to enable Tony to obtain far more of the community assets than he was entitled to—his entitlement ordinarily being one-half of the net community worth.

It is, however, a clear case of constructive fraud, and many have been the cases where this Court, differently constituted over the years, has announced that a court will not let itself be used as an instrumentality of fraud—whether it be intentional or constructive.[6]

6. The circumstances of this case bear a resemblance to those stated in the unanimous opinion of Justice Bakes in *Blankenship v. Myers*, 97 Idaho 356, 544 P.2d 314 (1975). There Mr. Myers, also an elderly person, having suffered a $50,000.00 judgment against him, rendered himself insolvent by transferring all of his assets to his various children. Blankenship, the judgment creditor, levied upon a property which Myers had so conveyed to his children, in filing an action to reduce the judgment to an Idaho judgment and set aside the conveyance to the son as being in fraud of creditors. Myers testified that when he had transferred away all of his assets he didn't have any money and "owed a bunch of attorneys in Spokane a bunch of money"; he added that the litigation left him broke, worse than broke. 97 Idaho at 364, 544 P.2d at 322. This court in reversing a trial court judgment which had held for Myers and his son, quoted from *Mahor v. McLelland Lumber Co.*, 95 Idaho 38, 501 P.2d 722 (1972) for the proposition that "[a]ctual fraud must be proven by clear

To obtain relief Carol has had to pursue an appeal to the district court, and in turn to the Court of Appeals. When she was afforded proper relief by that court, Tony then brought her into this Court.

On remand to the trial court Carol should be entitled to reimbursement of all costs and attorney's fees which she has been put to by this wholly spurious claim of an oral gift of real property which encroached upon her rightful status as equal co-owner with her husband. Anything less than that relief will result in her still being victimized as the unintended victim of an undisclosed-to-her plan to avoid paying a few tax dollars to the taxing authorities on the deaths of Tony's grandparents.

HUNTLEY, J., concurs that this case could also be decided on the additional basis that Mr. Hall failed to prove a gift by clear and convincing evidence.

APPENDIX A

HALL v. HALL

TRANSCRIPT OF COURT TRIAL

BOISE, IDAHO

JULY 9, 1984

EXCERPTS

(FLORA FAULL'S TESTIMONY IN FULL)

DIRECT EXAMINATION

BY. MR. ROOD:

Q What is your name?

A Flora Faull.

Q How do you spell your last name, Mrs. Faull?

A F-A-U-L-L.

Q And what's your husband's name?

A Tom Faull.

Q How old are you, Mrs. Faull?

A Eighty-six.

Q And how about your husband, how old is he?

A He's eighty-eight.

Q And where do you live, Mrs. Faull?

A Horseshoe Bend.

Q How long have you lived in the Horseshoe Bend area?

A Oh, about thirty years or more.

Q Do you recall when you moved in ... up there?

A ... About '34, wasn't it, I think.

Q And what kind of business were you and your husband in over the years up there?

A Cattle business, stock business.

Q Now are you related in anyway to Tony Hall?

A Yes, he's my grandson.

Q And Mrs. Faull, do you recall signing a deed....

MR. ROOD: Your Honor, may I see Exhibit No. 1, I believe it is? Or do you have that?

MR. SETZKE: Here's a copy of it, I think he's got the one marked.

Q Mrs. Faull, I'm going to show you what we've marked here as Exhibit A. Will you look at that and tell me if you recall signing that? The signatures are on the back page.

---

and convincing evidence ['marked by an actual intent']; but when 'certain badges of fraud' attend the conveyance, and are not adequately explained, an inference of actual fraud may be warranted." 95 Idaho at 42, 501 P.2d at 726 (footnotes omitted).

*Blankenship,* 97 Idaho at 366, 544 P.2d at 324. My understanding is that where actual fraudulent intention be inferred, such amounts to constructive fraud. It is not necessary that it be intended, but only that it results—of which a good example is *Stearns v. Williams,* 72 Idaho 276, 240 P.2d 833 (1952). In *Blankenship* the grantor was seeking to avoid payment to Spokane attorneys; in *Hall v. Hall,* the Faulls were initially bent on avoiding inheritance taxes, but also did not file a gift tax return on the purported and totally undocumented $40,000.00 gift to Tony. In *Blankenship* a victim of the intent directed at Spokane attorneys was Blankenship and his unpaid $50,000.00 judgment. In *Hall v. Hall,* the claimed scheme aimed at avoiding payment of taxes on transferring real property, and was redirected at Carol Hall when she filed for a divorce.

The cases are indistinguishable.

A   Yes.

(Pause)

A   Yes.

Q   Do you recall, Mrs. Faull, did you and your husband receive any money in return for signing that deed?

A   Yes.

Q   Do you recall how much?

A   Sixty thousand.

Q   And what was that for?

A   That was to more or less ... be a tax protection for the—for them.

Q   Well, I mean what did they buy? What ... was bought with that $60,000.00? Tr. 157–159.

Q   Mrs. Faull, in your opinion was the place worth more than $60,000.00?

A   Yes.

Q   How much do you think it was worth in your opinion?

A   Oh, around a hundred thousand, but anything above that original was supposed to have been a gift to my grandson.

Q   Do you recall having discussed that with him, or do you....

A   Oh, yes, we had discussed it.

Q   And where were you when you had those discussions?

A   Right in my home.

Q   Do you have any idea when?

A   When?

Q   Yes.

A   I would say—let's see, we—they came in June, oh, around December, November, somewhere around....

Q   OK, do you recall if Carol was present when any of those things were talked about?

A   Well, I think she was because we usually didn't discuss those things until everybody was present that was concerned. And many times we had said that anything of—over and above that was supposed to be a gift.

MR. ROOD: I have no further questions, Your Honor.

## CROSS EXAMINATION

BY MR. SETZKE:

Q   Mrs. Faull, you said that many times Carol was present.

A   When we were discussing business, yes, she was usually around, and Tony.

Q   Tony was probably around, is that correct?

A   Well, both of them. We didn't usually discuss business without both of them.

Q   And Carol agreed that they—that the $60,000.00 in community assets were going to be used essentially to invest in the ranch, and that he was really going to be taking the ... difference as a gift, as his sole and separate property?

MR. ROOD: I object, Your Honor. I don't believe that's in issue. I don't believe that Mrs. Hall has to agree to that to make it the intent of the parties, and so I would object to that question as being—I know the Court wants a basis and I'd better give you one here. Whether she agreed or didn't agree is something she can testify to, but I don't believe that changes the intent of Mr. and Mrs. Faull, Your Honor. And so I would object to that line of questioning.

THE COURT: Well, I don't believe it does either, but it is Cross Examination. I think he can ask if....

MR. ROOD: Fine, Your Honor.

THE COURT: .... she knows if Mrs. Hall agreed to that, or if she communicated some agreement to it. Would you restate the question again for her?

Q   Yes. I believe you stated earlier that many times Mrs. Hall was present during these conversations.

A   Yes.

Q   And you're stating that she agreed that the $60,000.00 would not purchase all of the ranch,....

A   Well,....

Q   .... right? That there was ... excess value and that the excess value would be Mr. Hall, Tony Hall's property, is that right?

A  Yes, that's right, as an estate, that and my daughter's, and it was theirs together. (Indiscernible) sixty thousand we sold to them to protect it from this—tax, we thought.

Q  OK.  Now you never filed any estate and gift tax return, did you, indicating there was a gift?

A  I don't believe we did.

Q  OK.

A  But many times it was discussed and it was recognized to be that fact, that that's the way it was to be.

Q  Did you make any changes in a will or anything as a result of this agreement?

A  No, my will stands like it always did, just like I was saying, that—that it was my—my grandson's and my daughter's gift, and that the sixty thousand was to protect them from a tax.

Q  So do I understand you to say that—whenever you're talking about your daughter, who are you referring to?

A  Mrs. Porterfield.

Q  Mrs. Porterfield?

A  Uh-huh.

Q  OK.

MR. SETZKE:  Your Honor, I have no further questions.  Thank you very much.

THE COURT:  Any Redirect?

MR. ROOD:  No, I have nothing further, Your Honor.

THE COURT:  You may step down then.

WITNESS FAULL:  Thank you.

Tr. 167–171.

(EXCERPTS OF TONY HALL'S TESTIMONY)

CROSS EXAMINATION

BY MR. SETZKE:

Q  Mr. Hall, according to your calculations there, after you subtract out everything, how much acreage are we talking about has a value of $76,784.00?

A  The entire five hundred and fourteen.

Tr. 139.

(EXCERPTS OF CAROL HALL'S TESTIMONY)

Q  Do you remember the content of your first conversation with Tony Hall as to the possibility of buying the ranch?

A  That it would probably be a good deal.  Buy the ranch, live there. . . .

MR. ROOD:  Objection, Your Honor.  The question calls for a yes or a no answer.

·    ·    ·    ·    ·

Q  Do you remember approximately the first time, the nature of the conversation?

A  Just the nature of the conversation?  That he would someday like to come back here.  You know, his grandparents were getting older, they couldn't take care of the ranch, you know.  Could we buy the ranch?  You know, what do you think about it?  That—that was the general conversation.

Q  About on how many occasions did you discuss this matter?

A  Quite a bit.

(Pause)

Q  What was the price discussed?

A  Well, it was a long time before the price came up. . . .  I don't know exactly.

Q  What was the price?

A  Sixty thousand.

Q  How was that to be paid?

A  Cash.  We sold a home in San Jose . . .

Q  With regards to the $60,000.00, how often did you and Tony discuss that figure?

A  Well, probably quite a—quite a lot.  It was a good price.

Q  How . . . did you know it was a good price?

A  Well, any land is—it just seemed like a good price.  I mean, I'm no expert on land.  It just seemed like a good price for land.

Q  Had you been out—yo—how many times had you been to the ranch prior to. . . .

A  Oh, quite a bit.

Q  . . . . discussing buying it?

A   Yeah, we used to go once a year.  As long as we were in California, we'd come.

Q   How many times did Tony discuss with you that it was a gift?

A   Well, it was never a gift—discussed as a gift.  I mean, we were to pay $60,-000.00 for the property.  We were buying it.  A gift was never discussed.

## CROSS EXAMINATION

BY MR. ROOD:

Q   How long had Tony worked for IBM before you and he were married?

A   ... Probably a year.

Q   Did you grow up in this area, Mrs. Hall?

A   No, I didn't.

MR. ROOD:  I have no further questions, Your Honor.

THE COURT:  Any Redirect?

MR. SETZKE:  ... No, Your Honor.

THE COURT:  You may step down, then. Tr. 76–77, 78–79, 81.

## (EXCERPTS OF TONY HALL'S TESTIMONY)

### DIRECT EXAMINATION

Q   Tony, back in 1980, did you and your mother—were you going to purchase that place from your grandparents?

A   Yes ...

Q   Mr. Hall, the ... question—well, let ... me just back up.  Did you plan to purchase that ranch in 1980?

A   Yes.

Q   And where were you living at the time?

A   San Jose, California.

Q   And did you plan to purchase it in conjunction with anyone else?

A   Yes, I did.

Q   Who?

MR. STEZKE:  Your Honor, I'm going to object again just as it being irrelevant.

This is in 1980, prior to the—I don't want to be bothersome with this.  It's just that I fail to see the relevance.

THE COURT:  Well, I assume he's going to tie it in.  Let me reserve ruling on that. If you want a continuing objection shown along that line, the Court can do that.

MR. SETZKE:  I would like that, Your Honor.

MR. ROOD:  Thank you, Your Honor.

Q   With ... whom did you plan to purchase it?

A   With my mother, Virginia Porterfield.

Q   For how much money?

A   $60,000.00.

Q   Do you understand the difference, Mr. Hall, between community property and separate property?

A   Yes, I do.

Q   Can you tell me what you think community property is?

A   Community property is—is properties in which you and your spouse own collectively or together.  Separate property is like a gift or inheritance that is yours alone, or your spouse's alone.

Q   In what capacity did you plan to purchase the ranch in 1980 along with your mother, community or separate?

A   ... Separate.

MR. ROOD:  May I approach the witness, Your Honor?

THE COURT:  You may.

Q   Mr. Hall, I'm going to show you what we've marked as Defendant's Exhibit No. 1.  Can you tell me what that is?

A   Yes, that's a—in fact, it looks like the original copy of a contract that my mother and I entered—were going to enter into as a partnership.

Q   Does that set out the status of the property had you purchased it at that time?

A   Yes, it states that, "Thomas R. and Flora M. Faull, referred to as sellers, and A.M. Hall, a married man dealing with his sole and separate property and marry— M.V. Porterfield, a married woman dealing

with her sole and separate property, a partnership herein referred to as buyers."

Q Tony, how did you arrive at that $60,000.00 price at that time?

A That sixty thousand was a result of some ... you know, very complex I guess or comprehensive juggling of what would be a good price to avoid inheritance taxes or gift taxes actually, but on the other side of the coin, not be so high as to cause a large capital gains on the part of my grandparents. The purpose of it was to avoid inheritance taxes.

A Was that contract signed by your grandparents?

A Yes, it was.

Q Did you and your mother ever actually complete that transaction?

A No, we did not ...

Q Mr. Hall, did you and your wife have any conversations about ... how or what the status of this property was had you purchased it?

A Is that relative to—to....

Q That contract.

A .... this con—contract? ... I don't remember any specific. I know we—we talked about it, but any specific conversations other than ... my mother and I were going to—to go into a partnership for the purpose of purchasing the ranch to avoid inheritance taxes. Our fear was that ... if they should pass away and—that we would have to pay ... so much in ... State taxes that it would—we would probably—probably lose it. So this was a method to protect inheritance basically ...

Q ... Tony, do you have an opinion with respect to what that ranch is actually worth; that is, fair market value?

A What I feel it's worth, I would say eighty to $90,000.00, somewhere in that—that range ...

Q And Tony, you indicated earlier that you thought that in your opinion the place was worth ... did you say seventy to eighty thousand, I don't recall?

A I said around eighty to ninety.

Q Eighty to ninety thousand? Can you—have you based that upon any of the Assessor's assessed values there?

A Well, that and what I figure I could sell it for at a reasonable—for somebody to buy it.

Tr. 91, 97–99, 101–102, 124–125, 128–129.

BAKES, Chief Justice, dissenting:

The ambiguity inherent in the phrase "for value received" is, to me, readily apparent. "Value received" might mean one dollar, it might mean millions of dollars, it might mean rare paintings, it might mean precious stones, it might mean love and affection, or it might mean personal services performed, to name a few possibilities. Additionally, "for value received" is a generic phrase, preprinted on deeds, in form books, etc. Therefore, how can it be unambiguous when it is universally used in so many different situations to mean so many different things? The possibilities are endless, and the phrase doesn't describe what the consideration was. The phrase being ambiguous, Mrs. Faull's parol evidence was admissible to explain what the "value received" consisted of.

From its earliest days this Court has held that where, as here, the consideration clause merely recites a vague phrase such as "for value received" or "for one dollar and other valuable considerations," parol evidence is admissible to show the true consideration for the conveyance. *Rosenberry v. Clark*, 85 Idaho 317, 324, 379 P.2d 638, 642 (1963) ("Under certain conditions parol evidence may be introduced to show the true consideration, or want of consideration for a promissory note or other instrument."); *Reynolds Irr. Dist. v. Sproat*, 69 Idaho 315, 206 P.2d 774 (1949) (oral evidence offered to show what the "other valuable considerations" were should have been admitted); *Boise Valley Construction Co. v. Kroeger*, 17 Idaho 384, 105 P. 1070 (1909) (parol evidence was admissible to explain what was meant by "other considerations"). *See also Vanoski v. Thomson*, 114 Idaho 381, 757 P.2d 244 (Ct.App. 1988), petition for review denied (1988) (where the recital in a deed is merely a

receipt or acknowledgment of payment, it is susceptible to explanation or contradiction by parol evidence).

Our sister states are in accord. A concise explanation of the applicable law is contained in *Neils v. Deist,* 180 Mont. 542, 591 P.2d 652, 655 (1979):

> On the parol evidence question both the law of contracts generally and the law relating specifically to deeds allow parol evidence on the issue of consideration when the recital in the instrument is, as here, merely a receipt ("for value received").
>
> > "In a case in which the consideration for a written contract is mentioned merely by way of recital or as a receipt, the parol evidence rule does not preclude the admission of extrinsic evidence to show the true consideration...." 17 Am.Jur.2d Contracts § 90; to the same effect, 30 Am.Jur.2d Evidence §§ 1056 and 1057. "The tendency of modern times has been to regard the consideration clause in a deed merely in the light of a receipt and to allow parol evidence to explain the consideration for almost every purpose except to allow the grantor to avoid the deed where no fraud or mistake is shown." 23 Am.Jur.2d Deeds § 71.
> >
> > "As a general rule, and in line with the modern tendency ... parol or extrinsic evidence ... is admissible to show the actual consideration for the conveyance...." 23 Am.Jur.2d Deeds § 73.
>
> Where a deed is the only instrument involved in a controversy, the stated consideration ("one dollar and other considerations") can be explained by oral testimony. *Warner v. Johns* (1949), 122 Mont. 283, 201 P.2d 986.

*See also State v. Wilson,* 103 Ariz. 194, 438 P.2d 760, 764 (1968) (*en banc*) ("We have repeatedly held that the parol evidence rule

does not prevent evidence of the true consideration for a deed.").

In cases such as the one at bar, Professor Corbin states that the parol evidence rule only precludes the admission of parol evidence when it varies or contradicts the writing. 3 Corbin on Contracts § 573 (1960). In the instant case, however, the parol evidence offered by Mrs. Faull did not vary or contradict the writing. The deed stated that there was "value received," and Mrs. Faull's testimony simply explained what the "value received" was. Her testimony did not vary or contradict the deed. *Stone v. Bradshaw,* 64 Idaho 152, 159, 128 P.2d 844, 847 (1942) ("Testimony thus introduced [to explain what was meant by the language used in a document] merely defines or translates the language of the instrument. It does not vary or add to the terms of the writing and does not fall within the parol evidence rule."). Accordingly, Mrs. Faull's testimony did not violate the parol evidence rule.

Today's decision also runs counter to this Court's unanimous opinion in *Russ Ballard & Family Achievement Institute v. Lava Hot Springs Resort, Inc.,* 97 Idaho 572, 548 P.2d 72 (1976), and subsequent cases.[7] There, it was "undisputed that title to the real property ... was in Frank and Cecelia Jouglard who transferred it to Lava Hot Springs Resort, Inc." 97 Idaho at 579, 548 P.2d at 79. Nevertheless, one Irick (and the parties claiming through him) alleged that he had an ownership interest in the property. Rather than summarily ruling that the undisputed title to the property could not be varied or amended by parol evidence, this Court ruled that parol evidence could be offered, but that it must be "clear, satisfactory and convincing" proof in order for Irick to prevail. We stated:

> The law presumes that the holder of title to property is the owner thereof [citations omitted]. The effect of this presumption is that:

---

7. *See, e.g., Lynch v. Cheney,* 98 Idaho 238, 561 P.2d 380 (1977); *Collins v. Parkinson,* 98 Idaho 871, 574 P.2d 913 (1978); *Ed Sparks & Sons v. Joe Campbell Constr. Co.,* 99 Idaho 139, 578 P.2d 681 (1978); *Estate of Courtright v. Robertson,* 99 Idaho 575, 586 P.2d 265 (1978); *Aztec Limited,*

*Inc. v. Creekside Investment Co.,* 100 Idaho 566, 602 P.2d 64 (1979); *M.K. Transport, Inc. v. Grover,* 101 Idaho 345, 612 P.2d 1192 (1980); *State ex rel. Kidwell v. Master Distributors, Inc.,* 101 Idaho 447, 615 P.2d 116 (1980).

"[O]ne who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is clear, satisfactory and convincing. [Citations omitted.]"

97 Idaho at 579, 548 P.2d at 79. Hence, in *Lava Hot Springs* this Court unanimously held that the undisputed title to real property could be varied or amended via parol evidence if that evidence was "clear, satisfactory and convincing." The Court's opinion today, however, makes no such allowance. Neither does it explain why the *Lava Hot Springs* rule should not apply in the instant case. Instead, the majority simply summarily assumes that "[w]here the language of a deed is plain and unambiguous the intention of the parties must be determined from the deed itself, and parol evidence is not admissible to show intent." *Ante* at 484, 777 P.2d at 256. However, several of our cases have held otherwise, particularly our unanimous decision in the *Lava Hot Springs* case. The deed in *Lava Hot Springs* was just as "unambiguous" as the deed in the instant case; in fact, title to the real property involved in *Lava Hot Springs* was undisputed. 97 Idaho at 579, 548 P.2d at 79. *Lava Hot Springs*, it seems to me, is controlling, and under it Mrs. Faull's testimony was properly admitted. The majority makes no analysis of the *Lava Hot Springs* case, presumably because they conclude that decision is distinguishable. It would be helpful to know upon what basis it is being distinguished.

In any event, the phrase "for value received" is inherently ambiguous. This Court and other courts have already held that parol evidence is admissible when a deed is ambiguous, or merely recites that it was given "for value received." And finally, the Court errs when it fails to apply the *Lava Hot Springs* case without giving any explanation of its rationale for not doing so.

I would affirm the judgments of the district court and the magistrate court which made the factual determinations in this case.